**Nos. 2014-1253, -1265**

IN THE

# United States Court of Appeals for the Federal Circuit

BRIESE LICHTTECHNIK VERTRIEBS GMBH,
and HANS-WERNER BRIESE,

Plaintiffs-Cross-Appellants,

v.

BRENT LANGTON, B2PRO, KEY LIGHTING, INC.,
SERGIO ORTIZ, and EDWARD C. SCHEWE,

Defendants-Appellants.

Appeals from the United States District Court
for the Southern District of New York
Case No. 1:09-cv-9790
District Judge Samuel Conti

**CROSS-APPELLANTS' PRINCIPAL AND RESPONSE BRIEF**

Frederick Liu
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600

Gary Serbin
  *Principal Attorney*
Eric J. Lobenfeld
Nicole Nussbaum
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY 10022
(212) 918-3000

September 5, 2014

*Counsel for Cross-Appellants*

## CERTIFICATE OF INTEREST

Counsel for cross-appellants hereby certifies as follows:

1.      The full name of every party represented is:

Briese Lichttechnik Vertriebs GmbH and Hans-Werner Briese.

2.      The real parties in interest are:

Briese Lichttechnik Vertriebs GmbH, Hans-Werner Briese, and Hogan Lovells US LLP.

3.      All parent corporations and any publicly held companies that own 10% or more of the stock of the parties I represent are as follows:

Briese Lichttechnik Vertriebs GmbH has no parent company, and no company owns 10% or more of the stock of Briese Lichttechnik Vertriebs GmbH.

4.      The names of all law firms and partners or associates that appeared for the parties represented by me in the trial court or that are expected to appear in this court are:

Hogan Lovells US LLP: Gary Serbin, Eric. J. Lobenfeld, Patrick Joseph Dempsey, A. Elizabeth Korchin, Nicole Ashley Nussbaum, Frederick Liu, Amir Reza Ghavi, Joseph V. Saphia, and Mary Veronica Munoz (formerly Mary Veronica Mullally).

/s/ Gary Serbin
Gary Serbin

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ iii

STATEMENT OF RELATED CASES ...................................................... xi

JURISDICTION .......................................................................................... 1

COUNTERSTATEMENT OF THE ISSUES .............................................. 1

COUNTERSTATEMENT OF THE CASE .................................................. 2

SUMMARY OF THE ARGUMENT ........................................................ 15

ARGUMENT ............................................................................................ 18

I.     THE JUDGMENT OF INFRINGEMENT SHOULD BE
       AFFIRMED ...................................................................................... 18

       A.     There Can Be No Genuine Dispute That The Sliding
              Means Is "Displaceable On" The Tubular Carrying Means
              Of Appellants' Umbrella Reflector .................................... 18

       B.     The District Court Did Not Abuse Its Discretion In
              Striking Parts Of Ortiz's Declaration ................................ 23

       C.     The District Court Did Not Abuse Its Discretion In Letting
              Briese's Expert Use Demonstrative Slides During His Trial
              Testimony .......................................................................... 26

       D.     The Jury Instruction On Direct Infringement Provides No
              Grounds For Reversal ........................................................ 29

       E.     The Evidence Was Sufficient For A Reasonable Juror To
              Find That Ortiz And Langton Directly Infringed The
              Patent ................................................................................ 32

       F.     Briese Made At Least A Prima Facie Showing That The
              District Court Had Personal Jurisdiction Over Ortiz ......... 35

II.    THE JUDGMENT OF WILLFULLNESS SHOULD BE
       AFFIRMED ...................................................................................... 41

# TABLE OF CONTENTS—Continued

Page

III.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION
       IN STRIKING EVIDENCE THAT APPELLANTS SOUGHT
       TO RELY ON TO PROVE INVALIDITY ...................................................45

IV.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION
       IN GRANTING BRIESE'S MOTION IN LIMINE TO
       PRECLUDE EVIDENCE OR ARGUMENT RELATING TO
       INEQUITABLE CONDUCT ........................................................................49

V.     THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION
       IN IMPOSING SANCTIONS FOR APPELLANTS'
       REPEATED MISCONDUCT .......................................................................54

       A.    The District Court Did Not Abuse Its Discretion In
             Imposing Sanctions In Connection With The July 2010
             Discovery Conference .......................................................................54

       B.    The District Court Did Not Abuse Its Discretion In
             Imposing Sanctions In Its January 2011 Order ..................................58

       C.    The District Court Did Not Abuse Its Discretion In
             Imposing Sanctions In Its July 2013 Order ........................................64

VI.    THE DISTRICT COURT ERRED IN DENYING
       ATTORNEYS' FEES ...................................................................................66

CONCLUSION ..................................................................................................71

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page**

CASES:

*Advanced Display Sys., Inc. v. Kent State Univ.*,
212 F.3d 1272 (Fed. Cir. 2000) ....................................................30, 42

*Air Turbine Tech., Inc. v. Atlas Copco AB*,
410 F.3d 701 (Fed. Cir. 2005) ................................................................24

*Akro Corp. v. Luker*,
45 F.3d 1541 (Fed. Cir. 1995) ...............................................................41

*Alloc, Inc. v. ITC*,
342 F.3d 1361 (Fed. Cir. 2003) .............................................................21

*Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*,
776 F.2d 281 (Fed. Cir. 1985) ...............................................................26

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
902 F.2d 194 (2d Cir. 1990) ..................................................................36

*Bank of China, N.Y. Branch v. NBM LLC*,
359 F.3d 171 (2d Cir. 2004) ..................................................................25

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*,
682 F.3d 1003 (Fed. Cir. 2012) .................................................41, 42, 43

*Baugh ex rel. Baugh v. Cuprum S.A. de C.V.*,
730 F.3d 701 (7th Cir. 2013) .................................................................27

*Best Van Lines, Inc. v. Walker*,
490 F.3d 239 (2d Cir. 2007) ..................................................................37

*Briese v. Profoto A.B.*,
No. 99-8727 (C.D. Cal. Aug. 27, 1999) ..................................................6

*BrieseUSA, Inc. v. Briese Lichttechnik Vertriebs GmbH*,
No. 07-2735 (C.D. Cal. 2008) .................................................................7

*Caidor v. Onondaga Cnty.*,
517 F.3d 601 (2d Cir. 2008) .....................................................48, 59, 60

# TABLE OF AUTHORITIES—Continued

**Page**

*Cameron v. City of New York*,
 598 F.3d 50 (2d Cir. 2010) ............................... 32

*Castaldi v. Land Rover N. Am., Inc.*,
 363 F. App'x 761 (2d Cir. 2009) ..................... 28

*Clearstream Wastewater Sys., Inc. v. Hydro-Action, Inc.*,
 206 F.3d 1440 (Fed. Cir. 2000) ...................... 19

*CutCo Indus., Inc. v. Naughton*,
 806 F.2d 361 (2d Cir. 1986) ........................... 38

*Deutsche Bank Secs., Inc. v. Mont. Bd. of Invs.*,
 850 N.E.2d 1140 (N.Y. 2006) ..................... 37, 38

*Digeo, Inc. v. Audible, Inc.*,
 505 F.3d 1362 (Fed. Cir. 2007) ...................... 69

*Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*,
 672 F.3d 1270 (Fed. Cir. 2012) ...................... 20

*Edwards Lifesciences LLC v. Cook Inc.*,
 582 F.3d 1322 (Fed. Cir. 2009) ...................... 22

*EEOC v. United Ass'n of Journeymen*,
 235 F.3d 244 (6th Cir. 2000) ........................ 27

*Elecs. for Imaging, Inc. v. Coyle*,
 340 F.3d 1344 (Fed. Cir. 2003) ............... 36, 37, 40

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
 575 F.3d 1312 (Fed. Cir. 2009) ...................... 53

*Fielding v. Tollaksen*,
 510 F.3d 175 (2d Cir. 2007) ........................... 55

*Forest Labs., Inc. v. Abbott Labs.*,
 339 F.3d 1324 (Fed. Cir. 2003) ...................... 68

iv

# TABLE OF AUTHORITIES—Continued

**Page**

*Gen. Electro Music Corp. v. Samick Music Corp.*,
  19 F.3d 1405 (Fed. Cir. 1994) .......................................................52

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
  134 S. Ct. 1744 (2014).................................................................66

*Icon Health & Fitness, Inc. v. Octane Fitness, LLC*,
  Nos. 2011-1521, -1636,
  2014 WL 4194609 (Fed. Cir. Aug. 26, 2014) ....................................70

*In re Seagate Tech., LLC*,
  497 F.3d 1360 (Fed. Cir. 2007) (en banc) ........................................41

*Intellect Wireless, Inc. v. HTC Corp.*,
  732 F.3d 1339 (Fed. Cir. 2013) ....................................................51

*Isabella v. Koubek*,
  733 F.3d 384 (2d Cir. 2013) .........................................................18

*Jarvis v. Ford Motor Co.*,
  283 F.3d 33 (2d Cir. 2002) ..........................................................42

*King v. City of N.Y., Dep't of Corr.*,
  419 F. App'x 25 (2d Cir. 2011) .....................................................60

*Kirsch v. Fleet Street, Ltd.*,
  148 F.3d 149 (2d Cir. 1998) .........................................................44

*Kronisch v. United States*,
  150 F.3d 112 (2d Cir. 1988) .........................................................39

*Kruetter v. McFadden Oil Corp.*,
  522 N.E.2d 40 (N.Y. 1988).........................................................39

*K-TEC, Inc. v. Vita-Mix Corp.*,
  696 F.3d 1364 (Fed. Cir. 2012) ....................................................41

*Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*,
  744 F.3d 1272 (Fed. Cir. 2014) (en banc) ........................................18

## TABLE OF AUTHORITIES—Continued

**Page**

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*,
  424 F.3d 1336 (Fed. Cir. 2005) .........................................................20

*Lore v. City of Syracuse*,
  670 F.3d 127 (2d Cir. 2012) .............................................................23

*Luce v. United States*,
  469 U.S. 38 (1984).............................................................................51

*McGowan v. Smith*,
  419 N.E.2d 321 (N.Y. 1981)..............................................................39

*McKee Elec. Co. v. Rauland-Borg Corp.*,
  229 N.E.2d 604 (N.Y. 1964)..............................................................38

*Meyer Intellectual Props. Ltd. v. Bodum, Inc.*,
  690 F.3d 1354 (Fed. Cir. 2012) ....................................................52, 53

*Microsoft Corp. v. i4i Ltd. P'ship*,
  131 S. Ct. 2238 (2011).......................................................................49

*Musser v. Gentiva Health Servs.*,
  356 F.3d 751 (7th Cir. 2004) .............................................................25

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*,
  134 S. Ct. 1749 (2014)................................................................*passim*

*Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*,
  806 F.2d 1565 (Fed. Cir. 1986) ....................................................29, 31

*Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*,
  984 F.2d 1182 (Fed. Cir. 1993) .........................................................52

*Pedersen v. Manitowoc Co.*,
  255 N.E.2d 146 (N.Y. 1969)........................................................31, 35

*Peterson v. Highland Music, Inc.*,
  140 F.3d 1313 (9th Cir. 1998) ......................................................35, 36

vi

# TABLE OF AUTHORITIES—Continued

**Page**

*Phoenix Assocs. III v. Stone*,
  60 F.3d 95 (2d Cir. 1995) ......................................................................23, 47

*Powell v. Home Depot U.S.A., Inc.*,
  663 F.3d 1221 (Fed. Cir. 2011) ...........................................................43

*Reeves v. Sanderson Plumbing Prods., Inc.*,
  530 U.S. 133 (2000)................................................................................32

*Rice v. Nova Biomedical Corp.*,
  38 F.3d 909 (7th Cir. 1994) ...................................................................36

*Roldan v. Racette*,
  984 F.2d 85 (2d Cir. 1993) .....................................................................60

*Scaltech Inc. v. Retec/Tetra, LLC*,
  178 F.3d 1378 (Fed. Cir. 1999) ...........................................................48

*Shockley v. Arcan, Inc.*,
  248 F.3d 1349 (Fed. Cir. 2001) ...........................................................32

*Site Update Solutions, LLC v. Accor N. Am., Inc.*,
  556 F. App'x 962 (Fed. Cir. 2014) .......................................................70

*Solvay S.A. v. Honeywell Int'l Inc.*,
  742 F.3d 998 (Fed. Cir. 2014) .............................................................20

*Spence v. Superintendent, Great Meadow Corr. Facility*,
  219 F.3d 162 (2d Cir. 2000) ..................................................................60

*SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*,
  LLC, 467 F.3d 107 (2d Cir. 2006).......................................................26

*Sulzer Textil A.G. v. Picanol N.V.*,
  358 F.3d 1356 (Fed. Cir. 2004) ...........................................................30

*Synthes (U.S.A.) v. G.M. dos Reis Jr. Ind. Com. de Equip. Medico*,
  563 F.3d 1285 (Fed. Cir. 2009) ...........................................................40

# TABLE OF AUTHORITIES—Continued

**Page**

*Therasense, Inc. v. Becton, Dickinson & Co.*,
  649 F.3d 1276 (Fed. Cir. 2011) (en banc) ........................................49

*Thomas E. Hoar, Inc. v. Sara Lee Corp.*,
  900 F.2d 522 (2d Cir. 1990) ...................................................54

*Touchcom, Inc. v. Bereskin & Parr*,
  574 F.3d 1403 (Fed. Cir. 2009) ...................................................35, 40

*United States v. Al Kassar*,
  660 F.3d 108 (2d Cir. 2011) ...................................................24

*United States v. Birbal*,
  62 F.3d 456 (2d Cir. 1995) ...................................................51

*United States v. Cuti*,
  720 F.3d 453 (2d Cir. 2013) ...................................................24

*United States v. Glenn*,
  312 F.3d 58 (2d Cir. 2002) ...................................................24

*United States v. Male Juvenile*,
  121 F.3d 34 (2d Cir. 1997) ...................................................60

*United States v. Pinto*,
  850 F.2d 927 (2d Cir. 1988) ...................................................27

*Versata Software, Inc. v. SAP Am., Inc.*,
  717 F.3d 1255 (Fed. Cir. 2013) ...................................................20

*Wimmer v. Suffolk Cnty. Police Dep't*,
  176 F.3d 125 (2d Cir. 1999) ...................................................32

## STATUTES:

28 U.S.C. § 1295(a)(1) ...................................................1

28 U.S.C. § 1331 ...................................................1

28 U.S.C. § 1338(a) ...................................................1

# TABLE OF AUTHORITIES—Continued

**Page**

35 U.S.C. § 102 ........................................................................... 45

35 U.S.C. § 112 ........................................................................... 18

35 U.S.C. § 271(a) ....................................................................... 32

35 U.S.C. § 284 ....................................................................... 14, 41

35 U.S.C. § 285 ....................................................................... *passim*

N.Y. C.P.L.R. § 302(a)(1) ........................................................ 37, 38

N.Y. P'ship Law § 26(a)(1) ............................................................ 31

**RULES:**

Fed. R. Civ. P. 4(k)(1)(A) ............................................................. 37

Fed. R. Civ. P. 9(b) ................................................................. 53, 65

Fed. R. Civ. P. 12(b)(2) ................................................................ 36

Fed. R. Civ. P. 16(f) .................................................................... 57

Fed. R. Civ. P. 26 ................................................................... 24, 25

Fed. R. Civ. P. 26(a)(2)(A) ............................................................ 25

Fed. R. Civ. P. 26(a)(2)(B) ............................................................ 25

Fed. R. Civ. P. 26(a)(2)(C) ............................................................ 25

Fed. R. Civ. P. 26(a)(3) ............................................................ 65, 66

Fed. R. Civ. P. 51(c)(1) ................................................................ 42

Fed. R. Civ. P. 51(c)(2)(A) ............................................................ 42

Fed. R. Civ. P. 61 ....................................................... 25, 28, 49, 52

Fed. R. Civ. P. 72(a) ............................................................... *passim*

## TABLE OF AUTHORITIES—Continued

**Page**

Fed. R. Civ. P. 72(b) ................................................................60

Fed. R. Crim. P. 59(b) ..............................................................60

Fed. R. Evid. 103(a) ..........................................................25, 49

Fed. R. Evid. 611(a) .................................................................28

Fed. R. Evid. 701 .....................................................................24

Fed. R. Evid. 701(c) .................................................................24

Fed. R. Evid. 702 .....................................................................24

**OTHER AUTHORITIES:**

*Webster's II New Collegiate Dictionary* (1995) ....................21

**STATEMENT OF RELATED CASES**

Pursuant to Federal Circuit Rule 47.5, counsel for cross-appellants states that no other appeal in or from the same civil action or proceeding in the district court was previously before this or any other appellate court, and that counsel is not aware of any other case pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

## JURISDICTION

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1338(a), and entered final judgment on January 22, 2014.  A1-A2.[1]

Appellants filed a notice of appeal on January 17, 2014.  A6501-A6506. Cross-appellants filed a notice of cross-appeal on January 27, 2014.  Doc. No. 484. This Court has jurisdiction under 28 U.S.C. § 1295(a)(1).

## COUNTERSTATEMENT OF THE ISSUES

Appellants present these issues:

1.     Whether there is a genuine dispute that the sliding means is "displaceable on" the tubular carrying means of Appellants' accused product.

2.     Whether the district court abused its discretion in striking parts of appellant Sergio Ortiz's declaration in opposition to summary judgment on infringement.

3.     Whether the district court abused its discretion in letting Briese's expert use demonstrative slides during his trial testimony on infringement.

4.     Whether the jury instruction on direct infringement provides any grounds for reversal.

5.     Whether the evidence was sufficient to show that appellants Sergio Ortiz and Brent Langton directly infringed the patent.

---

[1]     Citations beginning "A" reference the Joint Appendix, not the addendum to Appellants' principal brief.

6.      Whether Briese made a prima facie showing that the district court had personal jurisdiction over Ortiz.

7.      Whether the determination that Appellants' infringement was willful should be upheld.

8.      Whether the district court abused its discretion in striking evidence that Appellants sought to rely on to prove that the patent is invalid.

9.      Whether the district court abused its discretion in granting Briese's motion in limine to preclude evidence or argument relating to inequitable conduct.

10.      Whether the district court abused its discretion in imposing sanctions for Appellants' misconduct in relation to a July 2010 discovery conference.

11.      Whether the district court abused its discretion in imposing sanctions in its January 2011 order.

12.      Whether the district court abused its discretion in imposing sanctions in its July 2013 order.

Cross-appellants present a single issue:

13.      Whether the district court abused its discretion in deciding that this is not an exceptional case warranting attorneys' fees.

## COUNTERSTATEMENT OF THE CASE

**The '146 Patent.**  Hans-Werner Briese applied for the patent-in-suit on April 15, 1997, and U.S. Patent No. 6,841,146 ("the '146 patent") was issued in

1998.  A268.  The '146 patent covers one of Mr. Briese's inventions: the variable focus umbrella reflector.  A268, A345.

Umbrella reflectors look much like rain umbrellas.  A349, A353.  When opened, their reflective material takes a symmetrical, dome-like shape.  *See* A269 (figs. 1 & 2).  A source emitting light (or other) waves is placed inside the dome, along the umbrella's axis.  A270.  The waves reflect off of the interior surface of the umbrella and out toward the opening.  A355.  All umbrella reflectors are focusing, for they can be used to focus light and other kinds of waves.

Professional photographers have long used umbrella reflectors to focus light during shoots.  A347.  For example, by placing the light source closer to the tip of the dome, a photographer can create a wider, less focused beam of light.  A270-A271.  And by placing the light source farther from the tip of the dome, a photographer can cast a narrower, more focused beam.  A270-A271.

When they first came into use, umbrella reflectors were *fixed* focus (i.e., had *fixed* focusing).  A347-A348.  That meant that the position of the light source along the umbrella axis could not be varied.  If a photographer wanted to shoot a subject in several different kinds of light, she had to bring various different reflectors with her—one for each type of focus.  A347-A348.

That changed when Mr. Briese invented the *variable* focus umbrella reflector.  Figure 1 of the '146 patent illustrates his invention (A269):

3



Fig.1

Variable focus umbrella reflectors differ from their predecessors in one fundamental way: They allow their users to *vary* the focus by moving the light source back and forth with respect to the tip of the umbrella's dome.  In the figure above, the light source (labeled 2) is located at the end of a "tubular carrying means" (1).  A271.  The tubular carrying means is held by an "annular" (i.e., ring-shaped) "bearing body" (5), located at the tip of the umbrella's dome.  A271.  And instead of being fixed at a certain position, the tubular carrying means is "displaceable" within that bearing body.  A270.  That means that the tubular carrying means can be moved with respect to the bearing body, varying the distance between the light source and the tip of the dome, and thus varying the focus of the reflected light.  A271, A349.  A photographer may consequently shoot

in different kinds of light, without having to carry more than one reflector.  A347-A348, A370.

The '146 patent contains multiple claims, but the only independent claim is Claim 1 (A271-A272):

An umbrella reflector, comprising:

a bearing body (5) into which a tubular carrying means (1) is inserted so that said tubular carrying means is displaceably held within said bearing body (5);

a ring of articulated joints (10) arranged on said bearing body (5) and to which umbrella stretchers (11) are hingedly attached, a reflecting umbrella covering (18) fastened to umbrella stretchers (11);

a sliding means (15) being displaceable on said tubular carrying means (1)[;]

a ring of toggle joints (14) arranged on said sliding means to which expanding stretchers (13) are mounted, the end of expanding stretchers (13) being secured to umbrella stretchers (11) by articulated expanding joints (12), said expanding stretchers (13) being dimensioned so that when opening the reflectors, said sliding means (15) is displaceable to a point past the plane of said articulated expanding joints (12), where the resilient restoring forces provide an arrestment holding the reflector in an open position, and

an element (2) emitting electromagnetic or acoustic waves which is arranged at the end of said tubular carrying means (1) facing the interior of said umbrella reflector so that by displacing said tubular carrying means within said bearing body said element is moved into different positions in relation to the opened reflector.

In 2009, Mr. Briese assigned the '146 patent to Briese Lichttechnik Vertriebs GmbH ("Briese GmbH"), a German company owned by Mr. Briese and managed by his wife, Jutta Briese. A657, A1337-A1338. Briese GmbH sells lighting products for professional photographers, including variable focus umbrella reflectors covered by the '146 patent. A656-A657.

**Prior lawsuits.** In the late 1990s, Langton started buying variable focus umbrella reflectors and other photography equipment from Mr. Briese. A360-A361, A513-A514. Ortiz later joined Langton, and together, they operated an equipment rental business in Los Angeles and New York. A406-A407, A880-A881, A887, A898. Both Langton and Ortiz traveled to Germany to learn about Mr. Briese's equipment. A360-A361, A440, A911, A946.

In 1999, Mr. Briese sued a different company, Profoto A.B., for infringing the '146 patent. *See Briese v. Profoto A.B.*, No. 99-8727 (C.D. Cal. Aug. 27, 1999). Because Mr. Briese resided in Germany, Langton offered to help him with the case in the United States. A361, A458-A459. Mr. Briese and Profoto ultimately settled the suit, and Profoto agreed to remove its accused product from the market. A361, A459-A460. Langton personally witnessed Profoto destroy part of its remaining inventory of reflectors in a trash compactor. A460.

In 2007, Mr. Briese's relationship with Langton and Ortiz soured, and Mr. Briese stopped selling them his products. A44. Langton and Ortiz, however,

continued using the "Briese" name, calling their company BrieseUSA. A44.

Langton and BrieseUSA even filed a trademark infringement suit, seeking to

prevent Mr. Briese from using his own last name in the United States. *See*

*BrieseUSA, Inc. v. Briese Lichttechnik Vertriebs GmbH*, No. 07-2735 (C.D. Cal.

2008). The suit backfired: After Mr. Briese and Briese GmbH filed a counterclaim,

the district court entered a preliminary injunction in their favor, prohibiting the

"Briese" name from being used by Langton and BrieseUSA. A44-A45, A465-

A469. The parties eventually settled. A45.

**This Lawsuit.** Following the trademark infringement suit, Langton and

Ortiz continued working out of Los Angeles and New York, but changed the name

of their business to B2Pro. A45. Langton and Ortiz also operate a Nevada

corporation called Key Lighting, Inc. A410-A411, A941, A999.

In 2009, the instant suit was filed in the Southern District of New York.

A223 (Doc. No. 1). In their second amended complaint, Mr. Briese and Briese

GmbH (together, "Briese") claimed that Langton, Ortiz, B2Pro, and Key Lighting

(collectively, "Appellants") were infringing the '146 patent by making and using

variable focus umbrella reflectors and renting them to customers. A1339-A1340.

Briese also claimed that Appellants were infringing Briese's trade dress. A1340-

A1341.

The district judge, Judge Swain, denied Ortiz's motion to dismiss for lack of personal jurisdiction, A182, and Appellants filed counterclaims, alleging trade libel and conversion. A1365-A1369, A1400-A1402. Appellants also asserted that the '146 patent was invalid and unenforceable due to inequitable conduct. A1359-A1363, A1394-A1398, A1424-A1428. In support of their defenses, Appellants claimed (among other things) that Mr. Briese had exhibited his variable focus umbrella reflector at a New York trade show in 1995, more than a year before the patent filing date. *E.g.*, A1361. Appellants attached to their answers a photo of the reflector that Mr. Briese had allegedly exhibited. A1374. The photo was taken not at a trade show, but rather in what appeared to be someone's garage. A1374.

During discovery, Judge Swain ordered Appellants to make the alleged "prior art" reflector available for inspection by March 5, 2010. A222. On that date, Appellants showed Briese part of a "180" reflector, so named because of its 1.8-meter diameter. A62. Various components, however, were missing, "including the yoke that would have held the umbrella to its stand and *the tube in the center of the umbrella where a light source would have been affixed* ('the tubular carrying means')." A62 (emphasis added).

In July 2010, Briese requested an informal discovery conference with Magistrate Judge Dolinger, to whom Judge Swain had referred non-dispositive matters. A2538. The purpose of the conference was to address Appellants' refusal

8

to provide discovery on 34 of Briese's 51 document requests.  A2538.  During the conference, however, Appellants were unable to justify their objections.  *See* A1578-A1603.  Indeed, the magistrate judge found Appellants' responses to Briese's requests "so deficient" and their "purported explanations" for their objections "so baseless" that he sanctioned Appellants, awarding Briese "reasonable expenses" in connection with the conference at an amount later fixed at $15,954.30.  A201, A208, A1603.  The magistrate judge further ordered Appellants to produce all responsive documents within two weeks, by August 5. A1602.

At that same July 2010 conference, Briese also complained that Appellants had produced only "part of" the alleged "prior art."  A1605.  The magistrate judge warned Appellants that "unless [they were] prepared, within the next two weeks [by August 5], to provide additional documentation of prior art, [they] will be limited to that which has been produced to date in all further proceedings in this case.  And if [Appellants] want[] to rely on unexplained photographs, so be it." A1606.

Two weeks passed, and Appellants did not produce any additional evidence of prior art.  Accordingly, the magistrate judge ruled that Appellants "are limited in all further proceedings in this case, regarding their allegations of prior art, to only the component(s) provided to Briese for inspection on March 5, 2010, and are

precluded from introducing into evidence or otherwise referring to at any time in this case, any undisclosed components or documentation of alleged prior art which was not provided to Briese for inspection by August 5, 2010." A214.

Appellants also did not produce, by August 5, all responsive documents to Briese's discovery requests, which sought, among other things, "documents regarding research, design, development, and manufacture of [Appellants'] umbrellas." A151-A153. With respect to 14 of Briese's requests, Langton submitted a declaration representing that he had searched for the requested documents but did not find any. A151. At a subsequent deposition of Langton, however, Briese "unearthed the fact that [Appellants] had failed to search for or produce documents relevant to this lawsuit, and indeed had failed even to look for e-mails on their servers, all in violation of their discovery obligations and prior court orders." A151-A152.

These and other discovery abuses led the magistrate judge to impose further sanctions on Appellants in January 2011. The magistrate judge ruled that "certain facts will be taken as established and deemed admissible both on summary judgment and at trial based on [Appellants'] non-production." A169. Those facts included (A169):

> B2Pro arranged for the design and manufacture of a series of reflector umbrellas after being in possession of the patented Briese reflector umbrellas.

> B2Pro has deliberately failed to turn over to [Briese], as legally required, all documents reflecting [Appellants'] claimed independent research for and design of their allegedly infringing reflector umbrellas and their component parts.

> B2Pro has deliberately failed to turn over to [Briese], as legally required, all documents reflecting [Appellants'] marketing and advertising of their allegedly infringing reflector umbrellas and all documents reflecting revenues from the rental of those allegedly infringing umbrellas.

In addition, the magistrate judge ruled that Briese "will be entitled to an instruction at trial that the failure of [Appellants] to provide required documents may permit an inference that [Appellants] deliberately infringed [the] patents in question and that they earned substantial revenues as a consequence." A170. The magistrate judge also held Appellants and their attorney, Edward Schewe, jointly and severally liable for expenses resulting from their misconduct. A171-A172. In a separate order dated October 2011, the magistrate judge awarded Briese $138,361.68 in fees and costs, A114, which Judge Swain later reduced to $129,361.68. A71.

Also in October 2011, Judge Swain issued an order regarding claim construction. A73. The parties agreed on the construction of all but four terms in the '146 patent; only three of the disputed terms were from Claim 1. A73-A74. Judge Swain adopted the parties' agreed-upon constructions, and resolved their disputes over the remaining terms. A73-A74.

In July 2012, Judge Swain denied Appellants' motion for summary judgment of invalidity of the '146 patent, and granted Briese's motion for summary judgment of validity.  A60.  In support of their motion, Appellants had sought to rely on evidence concerning certain elements of the 180 umbrella that had not been produced for inspection, as well as evidence concerning a second umbrella (a "240" device, with a 2.4-meter diameter), which they also claimed had been publicly displayed more than a year prior to the patent filing date.  A63. Judge Swain granted Briese's motion to strike Appellants' reliance on that evidence, because Appellants had not produced the 240 device or the missing components of the 180 device prior to the magistrate judge's August 5, 2010, deadline.  A63-A64.  Judge Swain then concluded that Appellants "cannot demonstrate that an invention meeting all of the limitations of Claim One was used, sold, displayed or described publicly prior to the one-year bar period."  A66.

In November 2012, Judge Swain ruled that there was a genuine dispute concerning only one of the limitations of Claim 1.  A54.  That limitation requires that "resilient restoring forces provide an arrestment holding the reflector in an open position."  A272.  Judge Swain concluded that there was a genuine dispute over whether Appellants' accused product satisfied this limitation, because according to a declaration by Ortiz, the accused product was held open not by "resilient restoring forces," but rather by mechanical contact between two tubes.

12

A54, A4942.  There was no genuine dispute, however, that each of the other limitations of Claim 1 was present in the accused product, so Judge Swain ruled that only the "arrestment" limitation would require a jury trial.  A54.

In that same order, Judge Swain struck Ortiz's declaration to the extent that it offered any opinion on infringement or claim construction, because Ortiz was never disclosed as an expert.  A51-A52.  She also denied Ortiz's renewed motion to dismiss for lack of personal jurisdiction.  A55-A59.

As trial approached, Briese learned that Appellants intended to argue an "inequitable conduct" defense to the jury based on the same evidence of "prior art" that Judge Swain had found insufficient to sustain Appellants' defense of invalidity. Briese filed a motion in limine seeking to preclude any evidence of inequitable conduct.  Doc. No. 324.  Briese argued that because the court had already ruled that Appellants' "prior art" evidence was insufficient to establish invalidity, that evidence was necessarily insufficient to meet Appellants' same burden of proving inequitable conduct.  Doc. No. 325, at 2-4.  Briese also maintained that to the extent Appellants sought to argue inequitable conduct based on other grounds, those arguments should be excluded because they had not been pled.  *Id.* at 4-5.

After a hearing, A6295-A6334, Judge Swain granted Briese's motion in limine.  A37-A38.  She also granted Briese's separate motion to compel Appellants to give Briese access to their accused products in preparation for trial.  A38.  With

respect to both motions, Judge Swain awarded Briese reasonable expenses, A38, which the magistrate judge later determined to be $51,614.11.  A36; *see also* A3-A4.

In August 2013, Judge Conti replaced Judge Swain as the district judge in the case.  Then, in October 2013, the parties presented their claims to a jury.  After five days of evidence, the jury found all four Appellants guilty of willfully infringing Claim 1.  A8-A9.  The jury also found that B2Pro was a partnership between Langton and Ortiz, A9, and awarded Briese $300,000 in damages against Appellants, jointly and severally.  A8.  The jury further found for Appellants on their trade libel counterclaim, but awarded them only $2 in damages, compensatory and punitive combined.  A1-A2, A9 n.1.  Finally, the jury rejected Briese's trade dress claim and Langton's counterclaim for conversion.  A9 n.1.

Following the verdict, Judge Conti denied Appellants' motions for judgment as a matter of law and for a new trial.  A9.  In light of the jury's finding that Appellants' infringement was willful, Judge Conti awarded Briese enhanced damages of $900,000 under 35 U.S.C. § 284.  A18.  He also permanently enjoined Appellants from making, using, renting, selling, or offering for sale the infringing devices.  A23.  Nevertheless, Judge Conti denied Briese's request for attorneys' fees under 35 U.S.C. § 285, concluding that "this is not an exceptional case" under

circuit precedent decided prior to *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014).  A21-A22.

In January 2013, Judge Conti entered judgment against Appellants, "jointly and severally, in the amount of $953,424.66"—a total that included prejudgment interest.  A2; *see also* A6.  Appellants now appeal that judgment, and Briese cross-appeals the denial of attorneys' fees under § 285.  A6504.

## SUMMARY OF THE ARGUMENT

All of Appellants' arguments are waived, meritless, or both.

On the issue of infringement, there can be no genuine dispute that Appellants' accused reflector is a copy of Briese's patented invention.  Appellants cannot propose a new construction of the term "displaceable on" for the first time on appeal, and in any event, their newly proposed construction cannot be squared with the commonsense understanding of the term.  Moreover, the district court did not abuse its discretion in striking parts of Ortiz's declaration in opposition to summary judgment, or in letting Briese's infringement expert use demonstrative slides during trial.

Furthermore, the court properly held all four Appellants jointly and severally liable.  Any error in the jury instruction on the liability of corporate officers was harmless, because the jury found that B2Pro was a partnership between Ortiz and Langton.  Thus, B2Pro's liability—which Appellants do not challenge—must be

15

imputed to Ortiz and Langton as partners of B2Pro, regardless of whether they were also liable as corporate officers of Key Lighting. Moreover, the evidence was more than sufficient to show that Ortiz made the accused product and that Langton used it, rendering them each liable for direct infringement. And the court did not err in asserting personal jurisdiction over Ortiz, because his own trial testimony established that he directed his infringing products at customers in New York.

The judgment of willfulness should also be affirmed, because Appellants have waived any challenge to the jury instruction on willfulness and the sufficiency of the evidence to support the jury's verdict. In any event, there are no grounds to disturb the determination that the objective and subjective prongs of willfulness were met.

Appellants have also identified no error in the court's rulings on invalidity and inequitable conduct. When Appellants failed to produce their alleged prior art by the discovery deadline, the magistrate judge did not abuse his discretion in precluding Appellants from relying on any evidence concerning that unproduced prior art. Appellants, in any event, waived any challenge to the magistrate judge's order by failing to timely object. The court also did not abuse its discretion in precluding evidence relating to inequitable conduct during trial. Inequitable conduct is not a jury issue to begin with, and there was nothing wrong about dismissing Appellants' defense on a motion in limine, where the same issues had

already been resolved on the parties' cross-motions for summary judgment on invalidity, and where Appellants received all the process they were due.

Finally, there was no abuse of discretion in the court's imposition of sanctions. Appellants engaged in a pattern of misconduct throughout this case, and the court was fully justified in imposing both monetary and evidentiary sanctions. Appellants did not even object to the magistrate judge's decision to impose sanctions in January 2011, so they have waived any right to further review of that decision.

That leaves only the issue raised by Briese's cross-appeal: whether Briese is entitled to attorneys' fees under § 285. The answer is yes, because Appellants' repeated misconduct throughout this case, combined with the substantive weakness of their position on the merits, make this case exceptional. In reaching a contrary conclusion, Judge Conti committed three errors of law: He applied the wrong definition of "exceptional," he held Briese to the wrong burden of proof, and he refused to consider Appellants' independently sanctionable conduct altogether. The Supreme Court's decision last Term in *Octane* makes each of these errors plain. Because there are no grounds for denying fees in the rare circumstances of this case, this Court should order that fees be granted. At the very least, this Court should vacate the denial of fees and remand this issue to the district court for

17

further consideration, free from the legal errors Judge Conti committed. In all

other respects, the judgment of the district court should be affirmed.

## ARGUMENT

## I. THE JUDGMENT OF INFRINGEMENT SHOULD BE AFFIRMED.

The judgment in this case holds all four Appellants "jointly and severally"

liable for directly infringing Claim 1 of the '146 patent. A2. That judgment

should be affirmed.

### A. There Can Be No Genuine Dispute That The Sliding Means Is "Displaceable On" The Tubular Carrying Means Of Appellants' Umbrella Reflector.

Claim 1 covers "[a]n umbrella reflector, comprising," among other elements,

"a sliding means (15) being displaceable on [a] tubular carrying means (1)." A271.

The district court ruled that there was no genuine dispute that Appellants' reflector

contained this element. A54. This Court reviews that determination de novo. *See*

*Isabella v. Koubek*, 733 F.3d 384, 387 (2d Cir. 2013); *Lighting Ballast Control*

*LLC v. Philips Elecs. N. Am. Corp.*, 744 F.3d 1272, 1276-77 (Fed. Cir. 2014) (en

banc).

During claim construction proceedings, the parties agreed on the

construction of this element. Specifically, the parties agreed that the term "sliding

means" in Claim 1 be read as a means-plus-function limitation under 35 U.S.C.

§ 112, covering an "[a]nnular structure" with the function of "being displaceable

on the tubular carrying means." A73, A2458-A2459; Doc. No. 110, at 23-24. This agreement was reached with the full understanding that the claimed function referred to "'guidance of the sliding means' by the tubular carrying means." Doc. No. 110, at 24; *see also* A2459. Having agreed on the construction of the term "sliding means," the parties requested the district court to adopt it, and the court did so. A73.

Appellants now contend (at 16) that the court "erroneously construed" the term "displaceable on" in the function part of the term "sliding means." (Capitalization and boldface removed.) They argue (at 18) that "on" should be construed as "requiring contact," so that the element is satisfied only if the sliding means "abut[s] or engag[es]" the tubular carrying means.

There is just one problem: The district court never construed the term "displaceable on," because Appellants never asked it to. To be sure, following discovery, Appellants argued that the evidence did not support a finding that the "displaceable on" limitation was present in their product. Doc. No. 250, at 16. But they never requested any construction of "displaceable on," much less a construction that would limit it to situations involving "abutting or engaging." *See Clearstream Wastewater Sys., Inc. v. Hydro-Action, Inc.*, 206 F.3d 1440, 1444 (Fed. Cir. 2000) (distinguishing claim construction from the evidentiary question of infringement). If Appellants thought the term should have been construed to

19

"requir[e] contact," they should have presented that construction to the district court. It is too late for them to propose that interpretation now. "[A] party may not introduce new claim construction arguments on appeal or alter the scope of the claim construction positions it took below." *Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*, 672 F.3d 1270, 1273 (Fed. Cir. 2012) (internal quotation marks omitted). Because Appellants failed to request any construction of "displaceable on" in the district court, they have "waived the issue and cannot now raise novel arguments to redefine the scope of claim 1." *Solvay S.A. v. Honeywell Int'l Inc.*, 742 F.3d 998, 1004 (Fed. Cir. 2014); *see also Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1262 (Fed. Cir. 2013) (holding that a party waived a claim construction by failing to "request[] any claim construction of the term" in the district court); *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1341 (Fed. Cir. 2005) ("LizardTech agreed to the district court's construction at the time, and it cannot now argue against that claim construction simply because it resulted in an adverse ruling on summary judgment.").

In any event, Appellants' late-breaking interpretation has no merit. When Claim 1 describes a sliding means that is "displaceable on" the tubular carrying means, it is not describing some groundbreaking new feature. Virtually every umbrella has a tube, or "tubular carrying means," positioned along the umbrella's axis. And virtually every umbrella has an annular structure, or "sliding means,"

which forms a ring around the tube. The ring has joints along its outer edge, which are connected to stretchers attached to other joints along the umbrella covering. A271. To open the umbrella, one guides the ring along the tube toward the tip of the dome; and to close the umbrella, one guides the ring along the tube in the other direction. A271.

The phrase "displaceable on" simply describes this familiar relationship between the ring and the tube. As Briese's expert, Mark Krichever, explained below, the phrase "refers to the capability of the sliding means (annular structure) to be guided along the focus tube." A5152. This understanding accords, moreover, with the words' ordinary meaning. When something is "displaceable on" something else, that is commonly understood to mean that the two things can "slide relative to one another." *Alloc, Inc. v. ITC*, 342 F.3d 1361, 1369 (Fed. Cir. 2003). The word "on," when used in this context, naturally refers to the "[l]ocation" of one of the things "at or along" the other. A5135 (*Webster's II New Collegiate Dictionary* (1995)) (giving, as an example of this use of "on," the phrase "a cottage *on* the river"). And given that Appellants' accused products function like any other umbrella—which is to say, "during opening or closing . . . the plastic ring is guided along the focus tube," A5152—there can be no genuine dispute that they contain this basic element. A54.

Appellants nevertheless contend (at 17-18) that "displaceable on" should be given the same meaning as "supported on"—a phrase appearing in a different claim, Claim 2—which the parties agreed means "abuts or engages." A1631. But "[w]hen different words or phrases are used in separate claims, a difference in meaning is presumed." *Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1330 (Fed. Cir. 2009) (internal quotation marks omitted). That presumption is particularly strong here, where different language in a different claim also describes different structures; unlike the element at issue in Claim 1, Claim 2 concerns the relationship between the ring and the "bearing body," not the ring and the tube. A272. Thus, contrary to Appellants' contention, there is nothing to suggest that the phrase "displaceable on" requires that there be contact between the ring and the tube.

And that makes sense, because, as Krichever explained, there must be *some* space between the two if they are to be "displaceable" at all. The tube, after all, must be able to fit inside the ring. And for that to be possible, the inner diameter of the ring "*must always be greater*" than the outer diameter of the tube. A5152. "In other words, basic engineering principles dictate that there will always be a gap between the two structures." A5152. Claim 1 imposes no requirement on how big or small that gap must be. A5152. Claim 1 requires merely that the ring be

"displaceable on" the tube.  And that limitation is met so long as the ring can be guided along the tube when opening and closing the umbrella.  A5152.

Because Appellants do not dispute that "during opening or closing of the accused reflectors the plastic ring is guided along the focus tube," A5152, the district court properly determined that their accused reflectors contain "a sliding means (15) being displaceable on [a] tubular carrying means (1)."

### B.     The District Court Did Not Abuse Its Discretion In Striking Parts Of Ortiz's Declaration.

Appellants next challenge (at 19) the court's decision to exclude parts of a declaration by Ortiz, which Appellants submitted in opposing summary judgment on infringement.  In that declaration, Ortiz opined on whether Claim 1 read on Appellants' accused reflector.  A4940-A4941, A4943-A4944.  The court allowed Ortiz to "testify as a lay witness on the structure and operation of the B2Pro umbrella reflectors."  A51.  "However," the court held, "Ortiz cannot parse the terms of the patent claims to opine as to whether the patent reads on the B2Pro umbrella reflectors."  A51.  Accordingly, the court struck Ortiz's declaration "to the extent that it offers any infringement opinion or claim construction."  A51-A52.

This Court reviews that decision for abuse of discretion.  *See Phoenix Assocs. III v. Stone*, 60 F.3d 95, 100 (2d Cir. 1995).  "The hallmark of abuse-of-discretion review is deference," *Lore v. City of Syracuse*, 670 F.3d 127, 155 (2d Cir. 2012),

and this Court will not disturb the district court's ruling unless it finds "manifest error." *United States v. Al Kassar*, 660 F.3d 108, 123 (2d Cir. 2011).

Under Federal Rules of Evidence 701 and 702, only a witness qualified as an expert may testify on matters that are "scientific," "technical," or "specialized" in nature. Fed. R. Evid. 701(c), 702; *see also United States v. Glenn*, 312 F.3d 58, 66-67 (2d Cir. 2002). Having reviewed the '146 patent and Briese's technical expert's opinion concerning infringement, Ortiz sought to opine on whether Appellants' accused reflector contained the elements of Claim 1 as construed by the district court. A4940-A4941, A4943-A4944. That is precisely the sort of opinion "based on scientific, technical, or other specialized knowledge" that the federal rules reserve to experts. Fed. R. Evid. 701(c); *see also Air Turbine Tech., Inc. v. Atlas Copco AB*, 410 F.3d 701, 713-14 (Fed. Cir. 2005); *United States v. Cuti*, 720 F.3d 453, 459 (2d Cir. 2013) ("Lay opinion under Rule 701 must be limited to opinions that 'result[] from a process of reasoning familiar in everyday life.'" (quoting Fed. R. Evid. 701 advisory committee's note to 2000 amend.)). Appellants, however, never disclosed Ortiz as an expert under Federal Rule of Civil Procedure 26. A51. And so the court did not abuse its discretion in excluding those portions of Ortiz's declaration that sought to give an expert opinion. A51-A52.

On appeal, Appellants do not dispute that Ortiz sought to give an expert opinion, or that he was never disclosed as an expert under Rule 26. Instead, Appellants contend (at 19) that Rule 26 did not require Ortiz to provide an "expert report" because he "was not retained or specially employed to provide expert testimony" and because his duties do not "regularly involve giving expert testimony." But the issue is not whether Ortiz had to provide an *expert report*; the issue is whether he had to be *disclosed* as an expert. And under Rule 26, "a party *must* disclose . . . the identity of *any* witness" who will present expert testimony, regardless of whether that disclosure must be accompanied by a written report. Fed. R. Civ. P. 26(a)(2)(A) (emphases added); *see also id.* R. 26(a)(2)(B), (C) (independently requiring that "this disclosure . . . be accompanied by a written report" in the case of certain expert witnesses); *Bank of China, N.Y. Branch v. NBM LLC*, 359 F.3d 171, 182 n.13 (2d Cir. 2004) (distinguishing Rule 26(a)(2)(A)'s requirement of disclosing an expert witness with Rule 26(a)(2)(B)'s requirement of submitting an expert report); *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 756-57 (7th Cir. 2004) (same). Thus, because Appellants did not disclose Ortiz as an expert during discovery, it was too late for them to offer him as an expert when opposing summary judgment. A51.

In any event, the exclusion of these portions of Ortiz's declaration did not affect Appellants' substantial rights. *See* Fed. R. Civ. P. 61; Fed. R. Evid. 103(a).

25

Ortiz, after all, is a defendant in this case. His self-serving opinion that his accused

product does not infringe Claim 1 would have carried little, if any, probative value,

even if it had been admitted. *See Ashland Oil, Inc. v. Delta Resins & Refractories,*

*Inc.*, 776 F.2d 281, 294 (Fed. Cir. 1985) (recognizing that "the opinion testimony

of a party having a direct interest in the pending litigation is less persuasive than

opinion testimony by a disinterested party"). Thus, any error in excluding these

parts of his declaration was harmless. *See SR Int'l Bus. Ins. Co. v. World Trade*

*Ctr. Props., LLC*, 467 F.3d 107, 119 (2d Cir. 2006).

Accordingly, the court did not abuse its discretion in striking parts of Ortiz's

declaration.

### C.    The District Court Did Not Abuse Its Discretion In Letting Briese's Expert Use Demonstrative Slides During His Trial Testimony.

Appellants challenge (at 29-30) the court's decision to let Briese's expert,

Krichever, use demonstrative PowerPoint slides during his trial testimony. One of

Krichever's slides listed the various models of Appellants' accused reflector.

A8744. Other slides showed the text of Claim 1, with check marks next to the

elements the court had found present in Appellants' accused reflector as a matter of

law. A8746-A8758. The remaining slides showed the text of the single limitation

left for the jury to consider—i.e., the "arrestment" limitation—together with the

court's construction of that limitation and a series of diagrams showing how, in the

26

words of Claim 1, "said sliding means (15) is displaceable to a point past the plane of said articulated expanding joints (12), where the resilient restoring forces provide an arrestment holding the reflector in the open position."  A272, A8700-A8743, A8758-A8763.  This Court reviews the decision to let Krichever use these slides for abuse of discretion.  *See United States v. Pinto*, 850 F.2d 927, 935 (2d Cir. 1988).

Appellants contend (at 29-30) that the slides should have been disallowed because they were not disclosed in Krichever's expert report.  But as the district court concluded, the slides did not have to be disclosed in that report, because they "d[id] not contain new information."  A12; *see also EEOC v. United Ass'n of Journeymen*, 235 F.3d 244, 252 (6th Cir. 2000) (upholding experts' use of previously undisclosed exhibits because the exhibits "contained nothing new").  Krichever's expert report identified the various models of Appellants' accused reflector, A8769-A8770, and opined that each one contained every element of Claim 1, A8779, A8790, including the "arrestment" limitation as construed by the court, A8785-A8786.  Thus, as the court found, the slides "merely illustrate[d] points that Krichever already made in his expert report."  A12-A13.  "That is a classic and proper use of a demonstrative exhibit, and such use is properly left to the sound discretion of the judge presiding over the trial."  *Baugh ex rel. Baugh v. Cuprum S.A. de C.V.*, 730 F.3d 701, 708 (7th Cir. 2013); *see also* Fed. R. Evid.

27

611(a) (giving the district court "reasonable control over the mode . . . of . . .
presenting evidence so as to . . . make those procedures effective for determining
the truth [and] avoid wasting time"); *Castaldi v. Land Rover N. Am., Inc.*, 363 F.
App'x 761, 762 (2d Cir. 2009) (holding that the district court's discretion
"generally encompasses the authority to allow the use of demonstrative aides,
including the display of charts or tables accurately summarizing the content of
primary testimony").

In any event, any error in permitting Krichever to use these demonstrative
slides was harmless. *See* Fed. R. Civ. P. 61. With or without the slides, Krichever
would still have testified that the "arrestment" limitation was present in Appellants'
accused reflector. A601-A603, A614-A617. And if the slides had been disallowed,
Krichever would have simply illustrated his points by writing and drawing on a
board. *See* A572 (the district court explaining: "If he got up there with a blank
screen and wanted to draw this, he could do it. That is exactly the same."). Thus,
the jury would have been given virtually the same presentation, even without the
slides. The slides themselves, moreover, "were not admitted into evidence, nor
were they provided to the jury during its deliberations." A13. Furthermore,
Krichever showed to the jury the "arrestment" limitation in the physical accused
reflector. A614-A617. Therefore, the premise of Appellants' contention that,
absent the slides, there would have been "no legally sufficient evidence for a jury

to find infringement" is false.  Because the slides were not evidence at all, there would still be sufficient evidence of infringement, even without the slides.  The court's decision to let Krichever use the slides was not error, let alone reversible error.

### D.    The Jury Instruction On Direct Infringement Provides No Grounds For Reversal.

Langton and Ortiz also challenge (at 20) the court's jury instruction on direct infringement, Jury Instruction No. 14, which stated in relevant part (A1229 (emphasis added)):

> In this case, Plaintiffs assert that Defendants have directly infringed the '146 Patent.  Defendants are liable for directly infringing the Briese Patent if you find that Plaintiffs have proven that it is more likely than not that Defendants made, used, imported, offered to sell, or sold the invention defined in Claim 1 of the Briese Patent. *Additionally, personal liability may be imposed upon corporate officers for participating in, inducing, and approving acts of patent infringement.*

Langton and Ortiz take issue only with the last sentence, pertaining to "personal liability" for "corporate officers."  They argue (at 22) that this sentence misstates the law because, in their view, corporate officers can be held personally liable for infringement under only an "inducement" or "alter ego" theory, neither of which Briese pursued in the case.  *See Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1579 (Fed. Cir. 1986).

"Whether a jury instruction is legally erroneous is a question of law," which this Court reviews de novo. *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000); *see also Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1363 (Fed. Cir. 2004). Even if a jury instruction were legally erroneous, however, this Court will not alter the judgment unless the appellant proves that the error "had prejudicial effect." *Advanced Display*, 212 F.3d at 1281.

In rejecting Langton's and Ortiz's challenge to Jury Instruction No. 14 in their motion for a new trial, the district court found no need to decide whether the instruction was legally erroneous. A10-A12. This Court need not decide that question either. That is because even assuming that the instruction did misstate the law governing the "personal liability" of "corporate officers," the alleged error had no effect on the judgment, which imposes liability on all four Appellants—B2Pro, Key Lighting, Langton, and Ortiz—"jointly and severally." A2.

To begin, the challenged language pertains only to the liability of "corporate officers." Thus, as the district court pointed out, Langton's and Ortiz's argument "does not implicate the liability of B2Pro or Key Lighting." A11. The judgment against those two entities is unaffected, whether the challenged language is correct or not.

Further, the jury specifically found that "B2Pro was a partnership between Langton and Ortiz"—a finding Appellants do not challenge. A9. And it is

30

blackletter law that "[w]hen a tort is committed by [a partnership], the wrong is imputable to all of the partners jointly and severally." *Pedersen v. Manitowoc Co.*, 255 N.E.2d 146, 150 (N.Y. 1969); *see also* N.Y. P'ship Law § 26(a)(1) ("[A]ll partners are liable . . . [j]ointly and severally for everything chargeable to the partnership . . . ."). "Infringement is a tort," *Orthokinetics*, 806 F.2d at 1579, and the jury found that B2Pro was guilty of it. A8. That wrong is thus imputable to Langton and Ortiz jointly and severally. A2.

Langton and Ortiz nevertheless insist (at 22-24) that the challenged language was prejudicial because both of them were corporate officers of Key Lighting. Even if they were, however, that would not change the fact that they were also partners of B2Pro. A9; *see also* A17 (the district court: "even if Key Lighting could shield its own officers and employees from liability, that shield does not extend to B2Pro and its partners"). And so long as B2Pro is liable for direct infringement, Langton and Ortiz are jointly and severally liable, too, under the law of partnership. *See Pedersen*, 255 N.E.2d at 150.

Thus, as the district court held, Jury Instruction No. 14 "did not prejudice [Appellants] in any way." A12. Even if the challenged language were legally erroneous, all four Appellants would still be "jointly and severally" liable for direct infringement. A2. There are no grounds for altering the judgment.

### E.    The Evidence Was Sufficient For A Reasonable Juror To Find That Ortiz And Langton Directly Infringed The Patent.

To be liable for direct infringement under 35 U.S.C. § 271(a), "a party must make, use, offer to sell, or sell within the United States, or import into the United States, the patented invention." *Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1364 (Fed. Cir. 2001). For purposes of § 271(a), the "renting of a device constitutes 'use.'" A1228.

The district court denied Langton's and Ortiz's motion for judgment as a matter of law on the ground that there was insufficient evidence for the jury to find that they directly infringed Claim 1. A15-A17. This Court reviews that denial de novo. *Cameron v. City of New York*, 598 F.3d 50, 59 (2d Cir. 2010). In doing so, this Court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. . . . Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000). Judgment as a matter of law is appropriate only "where there is such a complete absence of evidence that no reasonable juror could find in favor of the non-moving party." *Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 134 (2d Cir. 1999).

There is no such "complete absence of evidence" here. Ortiz himself testified that he was "the person responsible for the design of B2Pro umbrella

32

reflectors." A424. He claimed that it was his "idea" "[t]o have B2Pro variable focus umbrella reflectors." A425. And he boasted that he "made every single part" in his machine shop, A426, repeatedly describing the equipment he personally "manufactured." A424; *see also, e.g.*, A428 ("we manufacture umbrellas"); A880 ("[t]he equipment I manufacture"); A915 ("I manufactured the spokes, I manufactured other parts."). Given Ortiz's own testimony, a reasonable juror could conclude that Ortiz made the patented reflector, thereby engaging in direct infringement.

Langton's own testimony is similarly damning. When asked whether he "rent[ed] B2Pro umbrellas" to customers, Langton answered "[a]bsolutely," without qualification. A472. He also described working as a "lighting designer" for his clients, A996, and how he would "show up with maybe ten different light sources and the umbrella would be one of them." A530; *see also, e.g.*, A529 ("So I basically have reduced myself or honed myself into creating different looks. Then that way when you come to set you can show a picture with ten different light sources and then the photographer then decides what to use."); A1001-A1002 ("I can say, OK, I have this product and I want to use it to talk to a client, get an interview, get a demo, do a cold call, and then with that I can introduce myself, the whole package."). As for B2Pro's rental business, Langton testified that he was so involved that he could "probably say something about every invoice." A535. In

33

light of the foregoing, a reasonable juror could find that Langton used the patented invention, thereby committing direct infringement.

Against all this, Langton and Ortiz maintain (at 26) that they dealt only in component parts, not fully assembled reflectors, and so they could not have directly infringed the patent. The jury, however, was not required to believe that story. And indeed, the evidence shows it to be false. When, for example, Ortiz testified that it was his "idea" "[t]o have B2Pro variable focus umbrella reflectors," A425, he was plainly referring to the whole reflector, not any individual parts. Ortiz similarly admitted that when all the "parts" he has "designed" are ready, "there's a final assembly, we assemble the umbrella, and basically there is no big secret to it. It's an umbrella. It works. You open it. It's there." A933. Langton was no less familiar with the reflector as a whole, testifying that "[his] B2Pro umbrella reflector, fully assembled," "gives you more options" than "the Briese product." A1023. And Langton even acknowledged that he "would turn . . . away" a customer who asked for only a single component of the B2Pro reflector. A545. Indeed, as the district court pointed out, B2Pro's "invoices reflect charges for every component of the infringing device, and show that B2Pro generally provided its customers with a 'set-up helper.'" A16; *see also* A8698 (invoice). B2Pro even advertised fully assembled variable focus umbrella reflectors on its website—further confirming that Langton and Ortiz did not deal merely in component parts.

A619-A621, A6538-A6548.  Thus, the evidence was more than sufficient to support the jury's verdict.

Of course, none of this ultimately matters, because the jury found B2Pro liable for direct infringement, A8-A9, and because it also found that "B2Pro was a partnership between Langton and Ortiz," A9.  Given those findings—which Appellants do not challenge—"the issue of whether [Langton and Ortiz] committed direct infringement is moot."  A12.  For as explained in Part I.D above, the fact that Langton and Ortiz were partners means that B2Pro's liability is imputed to them.  *See Pedersen*, 255 N.E.2d at 150.  Thus, regardless of whether they themselves directly infringed the patent, the judgment of the district court is correct: Langton and Ortiz are "jointly and severally" liable in damages.  A2.

### F.    Briese Made At Least A Prima Facie Showing That The District Court Had Personal Jurisdiction Over Ortiz.

Appellants contend (at 46) that the court lacked personal jurisdiction over Ortiz, who was not a resident of New York.  This Court reviews the issue of personal jurisdiction de novo.  *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1409 (Fed. Cir. 2009).

According to Appellants (at 46), "[t]he burden is on Briese to prove by a preponderance of the evidence that sufficient grounds for personal jurisdiction exist."  That burden, however, applies only when a defendant contests personal jurisdiction *at trial*.  *See Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1319

(9th Cir. 1998).  Ortiz did not do so here.  He did not contest personal jurisdiction in moving for judgment as a matter of law at the close of Briese's case, *see* A842, A844-A845, or in his post-trial motions, *see* Doc. Nos. 451, 454.  Instead, Ortiz raised the issue only *prior to trial*, in moving to dismiss under Federal Rule of Civil Procedure 12(b)(2), *see* Doc. No. 59, and then renewing that motion on the basis of deposition testimony after discovery, *see* Doc. No. 246.  Accordingly, Ortiz "may seek appellate review only of the issue that [he] actually contested below: . . . whether the district court was correct in denying the motion to dismiss." *Peterson*, 140 F.3d at 1319; *see also Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 915 (7th Cir. 1994).

It follows that a different standard applies.  Where, as here, "the district court's disposition as to the personal jurisdiction question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a *prima facie* showing that defendants are subject to personal jurisdiction." *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003); *see also Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990) (requiring only a prima facie showing after discovery).  "In the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any

factual conflicts in the affidavits in the plaintiff's favor." *Elecs. for Imaging*, 340 F.3d at 1349.

Briese easily made the requisite prima facie showing below, as the court concluded in denying Ortiz's renewed motion to dismiss. A55-A59. But even if the more stringent, "preponderance of the evidence" standard applied, Briese easily made that showing, too. That is because Ortiz's own testimony at trial established the facts necessary for the court's exercise of personal jurisdiction.

"Determining whether specific personal jurisdiction over a nonresident defendant is proper entails two inquiries: whether a forum State's long-arm statute permits service of process, and whether the assertion of jurisdiction would be inconsistent with due process." *Elecs. For Imaging*, 340 F.3d at 1349; *see also* Fed. R. Civ. P. 4(k)(1)(A).

New York's long-arm statute provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1); *see also Deutsche Bank Secs., Inc. v. Mont. Bd. of Invs.*, 850 N.E.2d 1140, 1142 (N.Y. 2006). "To determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." *Best Van Lines, Inc. v.*

*Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (quoting *Deutsche Bank*, 850 N.E.2d at

1142, 1144)).

Ortiz's own trial testimony is more than enough to establish the first element.

"A nondomiciliary 'transacts business' under [section] 302(a)(1) when he

'purposefully avails [himself] of the privilege of conducting activities within [New

York], thus invoking the benefits and protections of its laws.'" *CutCo Indus., Inc.*

*v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986) (quoting *McKee Elec. Co. v.*

*Rauland-Borg Corp.*, 229 N.E.2d 604, 607 (N.Y. 1964) (internal quotation marks

omitted)).  Here, while testifying at trial, Ortiz spoke repeatedly of his "business"

in New York.  *See* A887 ("In my business, both in LA and in New York . . . .");

A898 (agreeing that "B2Pro in New York is the same as B2Pro in LA, it's one

business"); A862 (acknowledging that Key Lighting, a company he "formed,"

A860, "pays the rent on the offices for B2Pro, . . . the one in New York"); A895

(referring to B2Pro as his "up-and-coming, thriving, successful business").  As part

of that business—which he conducted with his partner, Langton, A9, A904—Ortiz

personally "manufacture[d]" photography equipment for the purpose of renting it

to customers in "Manhattan."  A880-A881.  Ortiz even bragged that when their

rental "business . . . was doing well," "we were creating jobs for dozens of people

in New York."  A885-A886.  Thus, by his own admission, Ortiz transacted

business in New York, purposefully availing himself of the privilege of renting his equipment there.

The record also establishes the second element. "In order for a cause of action to 'arise out of' a party's activities in New York, there must be 'an articulable nexus,' or a 'substantial relationship,' between the claim asserted and the actions that occurred in New York." *Kronisch v. United States*, 150 F.3d 112, 130 (2d Cir. 1988) (quoting *Kruetter v. McFadden Oil Corp.*, 522 N.E.2d 40, 43 (N.Y. 1988), and *McGowan v. Smith*, 419 N.E.2d 321, 323 (N.Y. 1981)). And here, Briese's patent infringement claim arises directly out of Ortiz's "rental business" in "Manhattan." A880-A881. That claim alleges that the patent was infringed by the very equipment Ortiz had manufactured for rentals in New York. A880.

Ortiz (at 49) nevertheless insists that he did "not visit New York for any purpose." But under New York's long-arm statute, "proof of one transaction in New York is sufficient to invoke jurisdiction, *even though the defendant never enters New York*, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Kruetter*, 522 N.E.2d at 43 (emphasis added). It is therefore immaterial whether Ortiz himself ever set foot in New York. In any event, Ortiz's own trial testimony makes it more likely than not that he *did* visit New York for business. Ortiz testified, for instance, that after Hurricane Sandy, "I" (meaning Ortiz personally)

had to "shuttle equipment back and forth" between New York and Los Angeles. A895. He also testified that he is "constantly on a plane," "liv[ing] out of a suitcase," and "doing every major trade show" in the country. A879. All of this suggests that, at some point, Ortiz traveled to the forum State in connection with his rental business.

Ortiz also contends (at 49) that he rented only component parts, as opposed to fully assembled reflectors, and so his activities did not directly infringe the '146 patent. But "personal jurisdiction, not liability for patent infringement, is at issue here." *Synthes (U.S.A.) v. G.M. dos Reis Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 1298 (Fed. Cir. 2009). The sole inquiry, for purposes of New York's long-arm statute, is whether Briese's infringement claim arises out of Ortiz's business in New York. The answer, as plainly demonstrated by Ortiz's own trial testimony, is yes.

That leaves only the question "whether the assertion of jurisdiction would be inconsistent with due process." *Elecs. for Imaging*, 340 F.3d at 1349. This Court has developed a "three-pronged approach for determining whether the exercise of jurisdiction is permitted under the Fifth Amendment." *Touchcom*, 574 F.3d at 1411. The first two prongs ask whether the defendant has "minimum contacts with the forum state" and whether "the claim arises out of or relates to the defendant's activities with the forum." *Id.* (internal quotation marks omitted). These two

40

prongs mirror the analysis under New York's long-arm statute, and so for reasons

discussed above, they are plainly satisfied. As for the third prong, the burden rests

on the *defendant* to "present[] a compelling case that jurisdiction would be

constitutionally unreasonable." *Akro Corp. v. Luker*, 45 F.3d 1541, 1546 (Fed. Cir.

1995). On appeal, Ortiz has not even attempted to do so. And indeed, there is

nothing unreasonable about someone being sued in New York because he directed

his infringing products there. The court properly denied Ortiz's motion to dismiss

for lack of personal jurisdiction.

## II.    THE JUDGMENT OF WILLFULLNESS SHOULD BE AFFIRMED.

Appellants also challenge the determination that Appellants' infringement

was willful. *See* A8-A9; A14. "A finding of willful infringement allows an award

of enhanced damages under 35 U.S.C. § 284." *Bard Peripheral Vascular, Inc. v.

W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1005 (Fed. Cir. 2012). "To prevail on

an allegation of willful infringement, the patentee must prove (1) that the accused

infringer 'acted despite an objectively high likelihood that its actions constituted

infringement of a valid patent'; and (2) that this objectively defined risk was either

known or so obvious that the accused infringer should have known about it."

*K-TEC, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1378 (Fed. Cir. 2012) (quoting *In

re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc)). The first

prong (i.e., the objective prong) is a question of law that this Court reviews without

deference.  *Bard*, 682 F.3d at 1006-07.  The second prong (i.e., the subjective prong) is a question of fact that this Court reviews for substantial evidence.  *Id.* at 1006.

1.    Appellants contend (at 34) that Jury Instruction No. 18 was legally erroneous because it let the jury consider the objective prong.  *See* A1235. Appellants, however, raised no objection to that instruction in the district court. After the court provided the parties with a draft of the jury instructions, *see* A540, Appellants objected only to Jury Instructions Nos. 13, 14, and 42.  A921-A928. Beyond those objections, Appellants represented that they had "[n]othing else on the jury instructions."  A928.  Consequently, Appellants have waived any objection to Jury Instruction No. 18.  *See* Fed. R. Civ. P. 51(c)(1), (c)(2)(A); *Advanced Display*, 212 F.3d at 1281 ("A party seeking to alter a judgment based on erroneous jury instructions must establish that . . . it made a proper and timely objection to the jury instructions . . . ."); *Jarvis v. Ford Motor Co.*, 283 F.3d 33, 57 (2d Cir. 2002) ("[F]ailure to object to a jury instruction . . . prior to the jury retiring results in waiver of that objection." (internal quotation marks omitted)).

Even if Appellants had preserved their objection, there was nothing erroneous about Jury Instruction No. 18.  "Under the objective prong, the answer to whether an accused infringer's reliance on a particular issue or defense is reasonable is a question for the court when the resolution of that particular issue or

defense is a matter of law." *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1236 (Fed. Cir. 2011). "When the resolution of a particular issue or defense is a factual matter, however, whether reliance on that issue or defense was reasonable under the objective prong is properly considered by the jury." *Id.* at 1236-37; *see also Bard*, 682 F.3d at 1007 (recognizing that an "underlying fact question" may be "sent to a jury").

At trial, Appellants' defense was intertwined with the issue of infringement; during closing arguments, for example, Mr. Schewe urged the jury not to find willfulness because Appellants' accused product was "obviously very different than the Briese patent," and because "[i]t's objectively reasonable to make a better and different product." A1174. Because infringement is a factual matter, there was no error in letting "the jury . . . consider how the infringement case weighed in the objective prong analysis." *Powell*, 663 F.3d at 1237. Later, in their motion for a new trial, Appellants raised a different defense, arguing that they had offered reasonable claim constructions under which there would have been no infringement. Doc. No. 454, at 16-19. Resolution of that defense did present a matter of law, and so Appellants' arguments were properly considered—and rejected—by the district court itself. A14-A15. Thus, the jury considered factual matters, while the court considered legal ones. Jury Instruction No. 18 was not legally erroneous.

43

2.     Appellants also contend (at 32) that the objective prong was not met, repeating the argument, made in their motion for a new trial, that they proposed "reasonable constructions for terms in claim 1 under which there would be no infringement."  The district court, however, *adopted* those very constructions, and Appellants were *still* found guilty of infringement.  A14.  Appellants have thus failed to point to any "reasonable" construction of Claim 1 under which they would *not* have infringed.  Their argument should be rejected.

3.     Finally, Appellants challenge (at 35-36) the jury's finding that the subjective prong was met.  "[A] party is not entitled to challenge on appeal the sufficiency of the evidence to support the jury's verdict on a given issue unless it has timely moved in the district court for judgment as a matter of law on that issue."  *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 164 (2d Cir. 1998).  In moving for judgment as a matter of law in the district court, Appellants did not challenge the jury's finding of willfulness.  *See* Doc. No. 451.  Accordingly, Appellants have waived any argument regarding the subjective prong.

In any event, substantial evidence supported the jury's finding.  To begin, the court instructed the jury that it could "infer that [Appellants] deliberately infringed the '146 patent" because Appellants "illegally withheld a number of documents that they were required to provide"—including "documents reflecting [their] claimed independent research for and design of their allegedly infringing

44

variable focus umbrella reflectors and their component parts." A1236. Moreover, during trial, the jury heard Langton testify that he knew about the '146 patent before this case and even witnessed another company—Profoto—destroy its accused reflectors after settling a similar suit. A455-A456, A458, A460. Given all this, a reasonable juror could have found that Appellants' infringement was willful. The award of enhanced damages should be affirmed.

## III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN STRIKING EVIDENCE THAT APPELLANTS SOUGHT TO RELY ON TO PROVE INVALIDITY.

Appellants argued below that the '146 patent is invalid because the claimed invention was described in a printed publication and was in public use more than a year before the patent's April 1997 filing date. Doc. No. 210, at 7-19; *see* 35 U.S.C. § 102. Appellants claimed that in 1995, Mr. Briese traveled to the United States with two variable focus umbrella reflectors, a 180 model and a 240 model. A3397. According to Appellants, the two devices were exhibited at a trade show in New York in November 1995. A3397; Doc. No. 210, at 7-16. After the show, the two devices were allegedly left with George Brown, a photographer and friend of Langton (who does favors for Langton and assisted Appellants in this litigation). A833-A834, A3396, A3401. Then, in December 1995, Brown allegedly began renting the 240 device to various New York photographers. A3402-A3403; Doc. No. 210, at 16-17. Appellants asserted that in March 1996, Brown also placed an

advertisement in a publication called Photo District News ("PDN"), which included a photograph of the assembled 180 and 240 devices. A3403; Doc. No. 204, at 17-19.

Appellants admitted that these alleged "prior art" devices were in their possession. A3641-A3642. And yet, when the court ordered Appellants to produce the devices for inspection by March 5, 2010, they produced only an incomplete 180 device, which was missing both "the yoke that would have held the umbrella to its stand and *the tube in the center of the umbrella where a light source would have been affixed* ('the tubular carrying means')." A62 (emphasis added). In other words, Appellants failed to produce the component that distinguishes a *variable* focus umbrella reflector from a reflector with *fixed* focusing. Appellants did not produce the supposed 240 device at all, even though they later claimed that they had actually brought it to the inspection but left it in its carrying bag. A62-A63. The magistrate judge nevertheless gave Appellants a second chance, and ordered them to produce any additional prior art evidence by August 5, 2010. A1606. When Appellants failed to produce anything further, the magistrate judge ruled that Appellants would be limited to evidence of prior art they had produced up to that point. A214.

Notwithstanding that order, Appellants moved for summary judgment of invalidity, relying on "evidence concerning the 240 device and certain elements of

the 180 device that were not produced for inspection." A63. The district court granted Briese's motion to strike that evidence because Appellants had not produced either the 240 device or the missing elements of the 180 device by the August 2010 deadline. A63-A64. Then, turning to the merits of the invalidity issue, the court noted that "[t]he sole device that [Appellants] produced for inspection on March 5, 2010, was a 180 device that lacked, among other things, a tubular carrying means." A66. The court concluded: "Because [Appellants are] precluded from proffering evidence of prior art that contains a tubular carrying means, [Appellants] cannot demonstrate that an invention meeting all of the limitations of Claim One was used, sold, displayed or described publicly prior to the one-year bar period." A66. The court thus rejected Appellants' invalidity defense. A66.

Appellants do not challenge the merits of the court's decision on invalidity. Rather, Appellants challenge only the court's decision to strike "portions of documents" referring to the "240 device, the yoke of the 180 device, and the tubular carrying means of the 180 device." A63. This Court reviews that decision only for abuse of discretion. *See Phoenix Assocs.*, 60 F.3d at 100.

There was no abuse of discretion here. To begin, the court's decision merely enforced the magistrate judge's earlier, August 2010 order limiting Appellants to the prior art they had produced up to that point. Appellants did not object to the

magistrate judge's August 2010 order within 14 days, as required by federal rule. *See* Fed. R. Civ. P. 72(a). Consequently, Appellants waived any objection to that order, both in the district court and on appeal. *See id.*; *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 605 (2d Cir. 2008); *infra* pp. 58-61. Taking that order as a given, the district court did not abuse its discretion in merely enforcing it.

Moreover, striking Appellants' reliance on evidence concerning undisclosed prior art was eminently reasonable, even leaving aside Appellants' waiver. All of the "barring activity" that allegedly took place more than a year before the patent's filing date—the trade show, the rentals, and the PDN ad—revolved around the two devices Mr. Briese supposedly left with Brown in 1995. *Scaltech Inc. v. Retec/Tetra, LLC*, 178 F.3d 1378, 1383 (Fed. Cir. 1999). During discovery, the magistrate judge gave Appellants ample opportunity to produce those two devices for inspection. And it was well within Appellants' power to do so; after all, they were able to bring both the 180 device and the 240 device to the March 2010 inspection. A62-A63, A3641-A3642. Nevertheless, Appellants produced only an incomplete 180 device, A62, so it was well within the court's discretion to limit Appellants to that evidence. Indeed, it would have been patently unfair if the court had instead permitted Appellants to rely on evidence of prior art that they had withheld from Briese. If Appellants had wanted to rely on such evidence— concerning the 240 device and the yoke and the tubular carrying means of the 180

48

device—they should have produced the 240 device and those missing components for inspection.

In any event, any error in excluding the evidence was harmless. *See* Fed. R. Civ. P. 61; Fed. R. Evid. 103(a). That is because, without the 240 device or the missing 180 components themselves (which Appellants never produced), there was no way of telling whether the two devices allegedly exhibited at the trade show, rented to customers by Brown, and displayed in the PDN ad were *variable* focusing as opposed to *fixed* focusing. Indeed, none of the allegedly corroborating evidence—undated photographs, invoices, and a copy of the PDN ad, A3407-A3442—would have shown that the 180 and 240 devices in question were *variable* focusing. Thus, even if the court had considered Appellants' evidence, there still would have been no triable issue as to whether the claimed invention had been publicly used or described more than one year before the patent filing date. *See Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011) (requiring an invalidity defense to be proved by clear and convincing evidence). Accordingly, the judgment of validity should be affirmed.

## IV.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN GRANTING BRIESE'S MOTION IN LIMINE TO PRECLUDE EVIDENCE OR ARGUMENT RELATING TO INEQUITABLE CONDUCT.

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson &*

*Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) (en banc).  To prevail on the defense, an accused infringer must prove, by clear and convincing evidence, "that the applicant misrepresented or omitted material information with the specific intent to deceive the PTO. . . . If the accused infringer meets its burden, then the district court must weigh the equities to determine whether the applicant's conduct before the PTO warrants rendering the entire patent unenforceable."  *Id.* at 1287.

Prior to trial, Briese learned that Appellants intended to pursue two theories of inequitable conduct in front of the jury.  *See* A5968.  The first theory claimed that Mr. Briese, in applying for a patent, had failed to disclose that his invention had previously been exhibited at a trade show, rented to photographers, and described in a PDN ad in the United States.  A1360-A1363; A1395-A1398, A1425-A1428.  The second theory claimed that Mr. Briese had falsely represented to the PTO that he had ordered a prior art search in connection with a petition to expedite the patent prosecution (also known as a "petition to make special").  *See* Doc. No. 337, at 4-5.  In their answers to Briese's second amended complaint, Appellants pled their first theory, but not their second.  A1360-A1363; A1395-A1398, A1425-A1428.  Briese filed a motion in limine to prohibit Appellants from arguing either theory before the jury.  *See* Doc. No. 325.

The district court held a conference to discuss Briese's motion.  With respect to Appellants' first theory, the court concluded: "[W]e've had summary judgment

50

motion practice on this. I considered very carefully everything that you [i.e., Appellants] submitted in support of your invalidity motion and in opposition to [Briese's] validity motion regarding prior marketing of the device, [and] I've decided that, it's done. There is no additional bite at the apple on those set of facts." A6314-A6315. Then, turning to Appellants' second theory, the court held that it "was not pled specifically, was not raised until shortly before preparation of the final pretrial submissions. It is, therefore, too late, and allowing it would be unfairly prejudicial to [Briese]." A6325-A6326. "Furthermore," the court held, Appellants' second theory was based only on "speculation," because there was "affirmative" evidence in the record that a prior art search had in fact been conducted. A6326. For these reasons, the court granted Briese's motion. A37. This Court reviews that decision for abuse of discretion. *See Intellect Wireless, Inc. v. HTC Corp.*, 732 F.3d 1339, 1342 (Fed. Cir. 2013); *United States v. Birbal*, 62 F.3d 456, 464 (2d Cir. 1995).

Appellants contend (at 40) that the court erred in dismissing their defense of inequitable conduct on a motion in limine. But the purpose of a motion in limine is to exclude anticipated evidence "before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). And here, Briese's purpose was just that: Anticipating that Appellants would attempt to put evidence of inequitable conduct before the jury, Briese filed a motion in limine to prevent that from

51

happening.  There was nothing improper about Briese's motion.  In fact, it was entirely justified, for Appellants had no right to argue inequitable conduct to the jury in the first place; "[t]he defense of inequitable conduct, being entirely equitable in nature, is not an issue for a jury to decide" at all.  *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1190 (Fed. Cir. 1993); *see also Gen. Electro Music Corp. v. Samick Music Corp.*, 19 F.3d 1405, 1408 (Fed. Cir. 1994) ("The disputed issues of fact underlying the issue of inequitable conduct are not jury questions, the issue being entirely equitable in nature.").  For that reason alone, the court did not abuse its discretion in granting Briese's motion in limine.

Moreover, because inequitable conduct is an issue only for the court, it made no difference what label the motion actually bore.  Whether labeled a motion in limine or a motion for summary judgment, Briese's motion would have been decided in the same way.  The court would have considered Appellants' evidence "regarding prior marketing of the device," A6315, and reviewed what Appellants had pled in their answers.  It then would have rejected both of Appellants' theories for precisely the reasons it did.  Thus, the fact that Briese's motion was styled a motion in limine instead of a motion for summary judgment made no difference. *See* Fed. R. Civ. P. 61.

*Meyer Intellectual Properties Ltd. v. Bodum, Inc.*, 690 F.3d 1354 (Fed. Cir. 2012), is not to the contrary.  In that case, this Court, applying Seventh Circuit law,

concluded that "the district court erred in addressing the sufficiency of Bodum's inequitable conduct defense on an evidentiary motion." *Id.* at 1378.  This Court reached that conclusion, however, only because the district court "did not allow for full development of the evidence and deprived Bodum of an opportunity to present all pertinent material to defend against the dismissal of its inequitable conduct defense." *Id.*  The district court in *Meyer* erred, in other words, by failing to provide the nonmoving party all the procedural protections associated with a motion for summary judgment.

That is not what happened here.  In this case, Appellants received all the process they were due.  Appellants' first theory of inequitable conduct rested on the same evidence of prior public use and publication that underlay their invalidity defense.  And as the court explained, "we've had summary judgment motion practice on this"; Appellants already submitted their evidence "in support of [their] invalidity motion and in opposition to [Briese's] validity motion," and the court already considered all of that evidence "very carefully."  A6314-A6315.  Thus, Appellants were not entitled to more process; they already had their "bite at the apple on those set of facts."  A6315.  As for their second theory of inequitable conduct, Appellants were not entitled to any opportunity to present evidence at all.  That is because "[i]nequitable conduct, while a broader concept than fraud, must be pled with particularity under Rule 9(b)." *Exergen Corp. v. Wal-Mart Stores,*

*Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009) (internal quotation marks omitted).

And here, as the court explained, Appellants did not plead their second theory in

their answers (raising it for the first time only shortly before preparation of the

final pretrial submissions), thus forfeiting the right to pursue that theory altogether.

A6325-A6326.

In short, this was not a case in which Appellants were denied the chance to

develop their evidence or present their case.  On the contrary, they received all the

procedural protections the law affords them.  Accordingly, the court did not abuse

its discretion in granting Briese's motion.

## V.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN IMPOSING SANCTIONS FOR APPELLANTS' REPEATED MISCONDUCT.

This Court reviews the imposition of sanctions for abuse of discretion, and

"must accept the [district] court's findings of facts underlying the sanctions unless

clearly erroneous."  *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525

(2d Cir. 1990).

### A.  The District Court Did Not Abuse Its Discretion In Imposing Sanctions In Connection With The July 2010 Discovery Conference.

Appellants first challenge (at 50-54) the magistrate judge's October 2010

order awarding Briese $15,954.30 in reasonable expenses relating to a July 2010

discovery conference.  A208.  Appellants timely objected to the order based only

54

on their alleged inability to pay.  A193.  The district court overruled Appellants'
objection, concluding that the magistrate judge's order was not "clearly erroneous
or contrary to law."  A195; *see also* Fed. R. Civ. P. 72(a).  Appellants subsequently
filed additional objections to the magistrate judge's order.  A2529.  Although the
district court did not expressly rule on those objections, its entry of final judgment
in the case "functions as a final order overruling [them]."  *Fielding v. Tollaksen*,
510 F.3d 175, 179 (2d Cir. 2007).

There was no abuse of discretion.  Briese sought an informal discovery
conference in July 2010 because Appellants had refused to meet and confer about
Appellants' refusal to provide discovery on 34 of Briese's 51 document requests.
A2538.  During the conference on July 22, the magistrate judge proceeded to go
through each of those requests, one by one.  A1578.  When asked why Appellants
had refused to produce, however, Appellants' counsel, Edward Kelly, was
repeatedly unable to articulate a basis for their objections; indeed, he was often
unaware of what documents Appellants even possessed.  *See* A1579, A1583 ("I
don't know.  I don't know."), A1584 ("I don't know, your Honor.").  For nearly
every request, Mr. Kelly ultimately agreed to produce whatever Appellants had.
*See, e.g.*, A1579 ("[I]f this exists, we'll produce it."); A1581 ("And we'll produce
these documents."); A1586 ("They will be produced, your Honor."); A1588 ("We
will produce those documents."); A1595 ("These will be produced, to the

extent . . . ."); A1598 ("[I]f there was, we would produce it."). This prompted the judge to remark: "It is obvious to me, Counsel, that you have come here thoroughly unprepared. . . . We're not going to waste our time with your thinking up excuses for that which you don't even apparently have a factual basis for . . . ." A1583. The judge concluded: "Insofar as [Appellants'] position on documents has been laid out here, it was thoroughly unjustified and, accordingly, [Briese] will be awarded its reasonable expenses in bringing this application to the Court." A1603.

According to Appellants, they should not have been sanctioned for two reasons. First, they fault (at 52) Briese for "not plac[ing] a phone call to defense counsel to attempt to meet and confer prior to the conference." But the record shows that Briese made repeated attempts to schedule a phone call with Appellants' counsel. On July 7, 2010, for example, Briese sent Mr. Schewe a letter seeking "a telephonic meet-and-confer" to discuss Appellants' objections and "hopefully ameliorate these issues." A2569. Instead of scheduling a call, however, Mr. Schewe wrote in reply that he had "reviewed [Appellants'] responses and [Appellants'] position continues to be that they were both timely and proper." A2571. Briese sent Mr. Schewe another letter on July 12, "reiterat[ing] [Briese's] request for a telephonic meet-and-confer," A2573, but again, Mr. Schewe did not agree to a discussion. As the magistrate judge found, "[t]here is no question that

[Briese's] counsel sought to obtain compliance before seeking court intervention." A202. That finding is not clearly erroneous.

Second, Appellants contend (at 53) that their behavior was no worse than Briese's, because, according to Appellants, Briese also made unjustified objections to document requests. But whether or not that was true, the magistrate judge rightly found it immaterial: "Let me be very clear about this. No matter what complaint a litigant, any litigant, has about the other side's inadequate, or obstreperous, or outrageous conduct in discovery, that is not, and never will be, an excuse for that complaining party to refuse to carry out its own discovery obligations." A1604. And in any event, the parties' conduct was hardly equivalent. Only Appellants arrived at the conference "thoroughly unprepared." A1583; *see also* Fed. R. Civ. P. 16(f) (authorizing the court to issue sanctions if "a party or its attorney . . . is substantially unprepared to participate—or does not participate in good faith—in the conference"); A208 (citing Fed. R. Civ. P. 16(f)). And unlike Appellants, Briese had "made two [document] productions already," and was in the process of producing "[t]he rest" of its responsive documents. A1611. Accordingly, Appellants have failed to show that the decision to impose sanctions was an abuse of discretion.

## B.   The District Court Did Not Abuse Its Discretion In Imposing Sanctions In Its January 2011 Order.

Appellants next challenge (at 54-62) the magistrate judge's January 2011 order imposing sanctions.  In that order, the magistrate judge found that Appellants had committed a range of discovery abuses, and concluded that their willful misconduct warranted several adverse factual findings, an inference of deliberate infringement, and an award of reasonable expenses.  A169-A172.  The magistrate judge left open the *amount* of Briese's reasonable expenses, and asked the parties to submit additional papers limited to that issue.  A172.  In a subsequent order dated October 2011, the magistrate judge decided to sanction Appellants for additional misconduct regarding the depositions of two witnesses—Kate Zander and Andrew Smith—and calculated Briese's total expenses to be $138,361.68.  A110, A114.  After Appellants filed objections later that same month, Doc. No. 198, the district court held that the objections were timely only insofar as they challenged the magistrate judge's October 2011 order.  A70-A71.  Concluding that sanctions for the Zander and Smith depositions were not warranted, the court reduced the monetary award by $9,000, to $129,361.68.  A71.

Appellants' challenge to the magistrate judge's January 2011 order fails for two independent reasons.

1.   First, Appellants have waived any challenge to that order by failing to timely object in the district court.  Federal Rule of Civil Procedure 72(a) provides:

58

> When a pretrial matter *not dispositive* of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order *within 14 days* after being served with a copy. *A party may not assign as error a defect in the order not timely objected to.*

(Emphases added).

Here, the magistrate judge issued his order imposing sanctions on January 14, 2011. A137. That order was final as to the nature and extent of Appellants' and Mr. Schewe's willful misconduct, A162-A167, as well as the sanctions that their misconduct warranted. A169-A172. Appellants, however, did not file any objections until October 20, 2011—well beyond the 14-day deadline under Rule 72(a). Doc. No. 198. Thus, Appellants have waived any right to further judicial review of the magistrate judge's January 2011 order. *See* Fed. R. Civ. P. 72(a); *Caidor*, 517 F.3d at 605. And indeed, that is precisely what the court concluded below, holding: "[Appellants'] objection, filed on October 20, 2011, is untimely insofar as it targets findings and holdings from the January Order, and will be overruled accordingly." A70-A71.

Hoping to escape this conclusion, Appellants complain (at 55) that the magistrate judge's January 2011 order did not give clear notice of the consequences of failing to object. But under Second Circuit precedent, the order did not have to. The Second Circuit requires that the magistrate judge give clear

notice only when the applicable federal rule is silent on the consequences of failing

to object.  *See* Fed. R. Civ. P. 72(b) (orders on dispositive matters and habeas

petitions); Fed. R. Crim. P. 59(b) (orders on dispositive matters); *Spence v.*

*Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 174 (2d Cir. 2000)

(habeas petition); *United States v. Male Juvenile*, 121 F.3d 34, 38-39 (2d Cir. 1997)

(dispositive matter in a criminal case); *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir.

1993) (habeas petition); *King v. City of N.Y., Dep't of Corr.*, 419 F. App'x 25, 26-

27 (2d Cir. 2011) (dispositive matter in a civil case).  Here, the applicable federal

rule is Federal Rule of Civil Procedure 72(a), governing orders on non-dispositive

matters in civil cases.  And unlike other rules, Rule 72(a) speaks directly to the

consequences of failing to object.  Indeed, "there is a warning as to waiver in Rule

72(a)" itself, *Caidor*, 517 F.3d at 604, which expressly informs parties that they

"may not assign as error a defect in the order not timely objected to."

Thus, the magistrate judge's order did not have to notify Appellants of the

consequences of failing to timely object.  The text of Rule 72(a) provided

Appellants with notice enough, and because they did not object to the January

2011 order within the specified 14 days, they have waived any right to this Court's

review.  *See Caidor*, 517 F.3d at 605 (holding that even a pro se litigant waives the

right to appellate review of an order on a non-dispositive matter, if the litigant fails

to timely object to the order under Rule 72(a)).

In any event, even if Appellants' October 2011 objections in the district court had been timely, they did not include all of the objections that Appellants now raise on appeal. In particular, Appellants did not challenge the magistrate judge's findings of willful misconduct regarding Langton's declaration about the absence of responsive documents, or Appellants' failure to produce their accused products during an August 2010 inspection. *See* Doc. No. 198. Thus, at the very least, those arguments in Appellants' opening brief (at 56, 59-60) should be deemed waived. *See* Fed. R. Civ. P. 72(a).

2.    Second, even if Appellants have properly preserved all of their objections, the magistrate judge did not abuse his discretion in imposing sanctions.

Appellants maintain (at 57) that they should not have been sanctioned for failing to produce responsive documents because they "either did produce responsive documents or explained that no responsive documents were found." That misses the point. The issue was not whether Appellants had produced *some* responsive documents; the issue was whether they had produced *all* of them. *See* A152-A153. And though Langton submitted a declaration "certify[ing]" that he had "searched, with [his] attorneys, for the documents requested," and that his "search did not find any document responsive to" 14 of Briese's requests, A2316, that declaration proved to be false. As the magistrate judge found, "[a]t the subsequent deposition of Mr. Langton, [Briese] unearthed the fact that [Appellants]

61

had failed to search for or produce documents relevant to this lawsuit, and indeed had failed to even look for e-mails on their servers, all in violation of their discovery obligations and prior court orders." A151-A152 (citing Doc. No. 100-1, Ex. M, at 17-20). "Since Mr. Langton concededly did not conduct a meaningful search and apparently no one else did for [Appellants]," the magistrate judge properly concluded that Langton's declaration was, "at best, highly misleading." A153. Indeed, the fact that Appellants had violated their discovery obligations was confirmed when, in October 2011, the magistrate judge ordered a "trove" of additional undisclosed relevant documents, which Briese became aware of only months earlier, to be admissible on a summary judgment motion and at trial. A92-A100.

Appellants also attempt (at 59-60) to defend their conduct during a court-ordered inspection of their accused products in August 2010. The purpose of the inspection was to let Briese inspect a representative sampling of the accused reflectors. A138-A139. A few days before the inspection, however, Mr. Schewe informed Briese that three models of Appellants' reflector would be unavailable because they were undergoing repairs. A139. Then, at the inspection itself, Langton "put on display a series of components, most of which had actually been manufactured by Briese and were thus not the items that [Briese was] seeking to inspect." A139. A subsequent deposition of an independent contractor who

worked for B2Pro revealed that Appellants' three models had in fact been available for inspection, but that Langton had decided to display Briese components instead, "even though they were not representative of what B2Pro normally supplied to rental customers." A140. Langton corroborated this account at his own deposition, admitting that he did not know why he did not bring Appellants' reflectors to the inspection. A141. It was well within the magistrate judge's discretion to impose sanctions for these fraudulent actions.

Appellants also insist (at 58-59) that they should not have been sanctioned for seeking to take a second deposition of George Brown beyond the deadline for fact discovery. Appellants do not dispute that they attempted to schedule Brown's second deposition for October 29, 2010, even though their time for completing fact discovery had expired nearly a month earlier. Instead, they argue that they reasonably believed that their deadline had been extended, citing an order of the magistrate judge dated October 6, 2010. A198. That order, however, plainly extended the fact discovery deadline for only Briese. The order itself is an endorsement of a letter from Briese's counsel, "ask[ing[] the Court to extend *Plaintiffs'* fact discovery deadline until October 30th." A200 (emphasis added). And the judge's order, handwritten at the top of the letter, stated: "We grant *the* request to set the conclusion of fact discovery for Oct. 30, 2010." A198 (emphasis added). There could thus be no confusion about whose deadline the judge had

extended.  The judge did not clearly err in finding that Appellants' attempt to schedule a second deposition of Brown constituted a "blatant violation" of their fact discovery deadline.  A159.

Finally, Appellants object (at 60-62) to paying any expenses relating to the depositions of Zander and Smith.  Appellants, however, have already prevailed on this point.  The district court held that Appellants' October 2011 objections were "timely . . . insofar as [they] challenge[d] sanctions imposed in connection with the Zander and Smith depositions," A71, because the magistrate judge had imposed such sanctions for the first time in his October 2011 order.  A70; *see also* A110. Then, agreeing with Appellants on the merits of their challenge, the court "modif[ied] the October Order to exclude sanctions in connection with the Zander and Smith depositions"—reducing the final monetary award by $9,000.  A71. There is no basis for modifying the award further.  Accordingly, the sanctions imposed should be affirmed.

### C.     The District Court Did Not Abuse Its Discretion In Imposing Sanctions In Its July 2013 Order.

In an order dated July 12, 2013, the court granted two of Briese's pretrial motions: (1) its motion in limine to preclude evidence and argument relating to inequitable conduct; and (2) its motion to compel Appellants to give Briese access to their accused products.  A37-A38.  As a sanction, the court also ordered Appellants to pay Briese's reasonable expenses in connection with those two

motions, A38, in an amount later fixed at $51,614.11. A36; *see also* A3-A4. Appellants appeal (at 62) that sanction.

The court did not abuse its discretion. The court was fully justified in awarding Briese reasonable expenses on its motion in limine. Briese filed that motion only because Appellants had plans to argue inequitable conduct to the jury. *See* A5968. And those plans were entirely inappropriate because, as explained in Part IV above, (1) inequitable conduct is not even an issue for the jury to decide; (2) Appellants' first theory of inequitable conduct—based on alleged prior use and publication of the invention—had already been rejected by the court; and (3) Appellants' second theory had not even been pled, as Rule 9(b) requires. The motion was thus one that Briese should have never had to file. By insisting on pursuing their theories in front of the jury, however, Appellants left Briese with no other choice. Therefore, it was perfectly reasonable for the court to order Appellants to pay Briese's reasonable expenses.

The court was also fully justified in awarding fees and costs on Briese's motion to compel. Near the outset of the case, the court entered an order requiring the parties to identify potential trial exhibits pursuant to Federal Rule of Civil Procedure 26(a)(3), and to "provide copies of each proposed exhibit for inspection by opposing counsel" before the start of trial. A218. Appellants subsequently listed "B2Pro umbrella reflector unit(s)" as potential trial exhibits on their

Rule 26(a)(3) disclosures. A6067. Briese similarly informed Appellants that Briese intended to use their accused devices at trial. A6016. When, however, Briese asked to inspect Appellants' accused devices before the start of trial, Appellants refused, advising Briese to take the issue up with the court. A6074. That forced Briese to move to compel Appellants to give Briese access to the accused devices, just so Briese could inspect them in preparation for trial.[2] Given that the court had already ordered the parties to make their proposed exhibits available for inspection, it was a motion that Briese should have never had to make. Because the motion was necessitated only by Appellants' refusal to follow the court's order, it was well within the court's discretion to require Appellants to pay Briese's reasonable expenses. Accordingly, the court's decision to impose sanctions should be affirmed.

## VI.    THE DISTRICT COURT ERRED IN DENYING ATTORNEYS' FEES.

In its cross-appeal, Briese raises only a single issue: whether it is entitled to attorneys' fees as the prevailing party under 35 U.S.C. § 285. This Court reviews the denial of attorneys' fees under § 285 for abuse of discretion. *See Highmark Inc.*

---

[2]    Appellants point out (at 64) that Briese had previously inspected the accused devices in 2010, during discovery. But the point of Briese's request to inspect the accused devices in 2013—three years later—was not for any purpose of discovery. Rather, Briese's purpose was to take one last look at the devices prior to trial—and ensure, among other things, that the devices Appellants might use as exhibits were the same devices that Briese had inspected three years prior. That purpose was hardly trivial, particularly given Appellants' history of litigation misconduct.

*v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1747 (2014).  "The abuse-of-discretion standard does not preclude an appellate court's correction of a district court's legal or factual error: A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence."  *Id.* at 1748 n.2 (internal quotation marks omitted).

Section 285 provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  Last Term in *Octane*, the Supreme Court held that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated."  134 S. Ct. at 1756.

This case fits that description.  Appellants in this case did not merely *infringe* or even *willfully infringe* Briese's patent—though the fact that they were found guilty of both demonstrates the inherent weakness of their litigating position. This was a case in which Appellants also attempted to *deliberately conceal* the willfulness of their infringement—for instance, by refusing to produce responsive documents, by lying about whether they had searched for responsive documents, by displaying the wrong products during a court-ordered inspection, and by disobeying a court order requiring them to give Briese access to their products before the start of trial.  *See supra* Part V.  And these examples represent only a fraction of Appellants' litigation misconduct; Appellants also gave "seemingly

false or misleading testimony," A162, engaged in efforts "to obstruct the taking of" more than one deposition, A163, and forced Briese to expend substantial resources simply to obtain Appellants' compliance with the court's orders. In short, Appellants' misconduct pervaded this suit from the very outset. And that "longstanding pattern" of misconduct, A166, when viewed together with the substantive weakness of their litigating position, separates this case from the run of the mill and makes it "exceptional."

In reaching a contrary conclusion, Judge Conti made three legal errors, which independently constitute an abuse of discretion. First, Judge Conti applied the wrong legal standard. Quoting pre-*Octane* precedent, he stated that a "[a]n exceptional case is one that involves 'inequitable conduct before the [PTO]; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; [or] a frivolous suit or willful infringement.'" A21-A22 (quoting *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1329 (Fed. Cir. 2003)). In *Octane*, however, the Supreme Court noted that this standard "appears to extend largely to independently sanctionable conduct." 134 S. Ct. at 1756. "But sanctionable conduct is not the appropriate benchmark." *Id.* Under *Octane*, "a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Id.* at 1757. Thus, although much of Appellants' misconduct *was*

independently sanctionable, Judge Conti should have taken into account even misconduct that *was not*. Because Judge Conti applied a definition of "exceptional" that has since been abrogated by *Octane*, his denial of fees cannot be upheld.

Second, Judge Conti held Briese to the wrong burden of proof. Again citing pre-*Octane* precedent, he stated that "[t]he evidence that a case is exceptional must be clear and convincing." A22 (citing *Digeo, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1367 (Fed. Cir. 2007)). In *Octane*, however, the Supreme Court held that "[n]othing in § 285 justifies such a high standard of proof. Section 285 demands a simple discretionary inquiry; it imposes no specific evidentiary burden, much less such a high one." 134 S. Ct. at 1758. Thus, Judge Conti erred in requiring that Briese meet a "clear and convincing" burden of proof. For this reason as well, Judge Conti's denial of fees cannot stand.

Third and finally, Judge Conti erroneously excluded Appellants' independently sanctionable conduct from consideration altogether. Though he acknowledged that Appellants had "engaged in sanctionable conduct during discovery," he declined to consider that conduct because Briese had "already been awarded attorney fees in connection with [it]." A22. That was error. Under *Octane*, the court must consider "the totality of the circumstances" in deciding whether a case is "exceptional." 134 S. Ct. at 1756. That inquiry necessarily encompasses *all* of Appellants' misconduct, including misconduct that is

independently sanctionable. Indeed, given that *Octane* requires consideration of conduct that is *not* independently sanctionable, *id.* at 1756-57, it would be absurd to exclude consideration of conduct that is, by definition, even worse. Of course, in calculating the award of fees, a court should not include amounts for work already compensated by separate sanctions. But that is a question of *how much* fees should be awarded, not *whether* they should be awarded at all. Because Judge Conti failed to consider the worst of Appellants' misconduct in determining whether this case is "exceptional," his order denying fees cannot be sustained.

Because this case is "exceptional," and because any other view of the case would be an abuse of discretion, this Court should reverse and order an award of fees under § 285. At the very least, this Court should vacate the denial of fees and remand the case to the district court for the limited purpose of reconsidering, free from the legal errors discussed above, whether this case is "exceptional." *See Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, Nos. 2011-1521, -1636, 2014 WL 4194609, at *4 (Fed. Cir. Aug. 26, 2014) (vacating denial of fees under § 285 and remanding for further proceedings in light of *Octane*); *Site Update Solutions, LLC v. Accor N. Am., Inc.*, 556 F. App'x 962, 962 (Fed. Cir. 2014) (same).

## CONCLUSION

For all of the foregoing reasons, this Court should reverse the denial of attorneys' fees under § 285, but affirm the judgment in all other respects.

Respectfully submitted,

Frederick Liu
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600

Gary Serbin
Eric J. Lobenfeld
Nicole Nussbaum
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY 10022
(212) 918-3000

September 5, 2014

*Counsel for Cross-Appellants*

# CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 28.1(e)(2)(B)(i) because it contains 16,499 words.

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in Times New Roman 14-point font.

/s/ Gary Serbin
Gary Serbin

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of September 2014, I caused a copy of the foregoing Cross-Appellants' Principal and Response Brief to be served by electronic means via the Court's CM/ECF system on all counsel registered to receive electronic notices.


/s/ Gary Serbin
Gary Serbin